CHARLES A. BERDEL et al.

v.

THE CITY OF CHICAGO.

*Opinion filed October 24, 1905.*

1. SPECIAL ASSESSMENTS—*superior court's determination as to distribution between property owners and city is final.* Under section 47 of the Local Improvement act of 1897 the determination of the distribution of the cost of an improvement between the public and the owners of the property to be assessed is conclusive.

2. SAME—*when plan of assessing benefits is unjust.* The plan of arbitrarily assessing as benefits to the portion of the lots not actually taken for the widening of a street for a market place, the amount assessed as damages for the portions of the lots taken, irrespective of the fact that the lots were differently situated and that some of them already enjoyed the benefits of the market place to a great degree, is unjust and requires reversal of the judgment.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

JAMES LANE ALLEN, and WING & WING, for appellants.

ROBERT REDFIELD, and FRANK JOHNSTON, Jr., (EDGAR B. TOLMAN, Corporation Counsel, of counsel,) for appellee.

Per CURIAM: This was a petition filed by the city of Chicago in the superior court of Cook county against the appellants and other defendants, praying the court to ascertain the just compensation to be paid for private property to be taken or damaged for the widening of West Randolph street from Halsted street to Sangamon street, a distance of three blocks, by taking thirty-five feet from the abutting property on each side of the street and making it one hundred and fifty feet wide instead of eighty, and to ascertain what property would be benefited by such improvement and the amount of such benefit.

The appellants are the joint owners of lots 17 and 18, in block 36, in Carpenter's addition to the city of Chicago. The lots are situated at the north-west corner of West Randolph and Halsted streets, having a frontage of fifty feet each on West Randolph street, extending one hundred feet north. Lot 18 is the corner lot and abuts one hundred feet on Halsted street. West Randolph street is eighty feet in width in front of these lots, but eastward from Halsted to Desplaines street, a distance of two blocks, it is one hundred and fifty feet wide. Lot 18 is improved with a four-story and basement brick building, of about forty-three feet frontage on Randolph street and running about sixty feet north on Halsted street, where it adjoins a like four-story and basement brick building of about forty feet frontage on Halsted street and running about fifty-five feet west along the alley. Lot 17 is the inside lot west, and faces fifty feet on Randolph street by one hundred feet deep, and is improved with some frame buildings, concerning the value of which there is no controversy here as to the award made. Commissioners were appointed, who made a report showing the total value of all the land taken on both sides of the street for the improvement to be $314,103.70; that there were no damages to property not taken and no benefits to the city of Chicago, and assessing the benefits to the remainder of each piece of property equal to the value of the property taken, so that the owners were paid for their land taken, in benefits to what was left. As to appellants' property, they reported the just compensation to be paid to them for the thirty-five feet taken from lot 17 as $10,062.50, and assessed back upon the remaining sixty-five feet of the lot $10,062.50, being the same amount for benefits to the property from the improvement. The just compensation reported to be paid appellants for thirty-five feet to be taken from the front of lot 18 was $14,875, and the benefits to the remainder of the lot were assessed at the same sum, thus balancing the amount allowed as for compensation for the land taken. The appel-

lants filed objections to the amounts allowed for the property to be taken and to the assessment of benefits to that not taken, and also objected to the report and finding of the commission that the city should not be required to pay any portion of this cost of the improvement. The objections were submitted to a jury for trial and the testimony of a number of witnesses was heard. The verdict of the jury was that the property was not assessed more than it would be benefited, and they fixed the compensation to be paid for the portion of the lots to be taken at the amounts, respectively, fixed by the commissioners and assessed the benefits to the parts of lots not taken in the same amounts. Judgments of condemnation and of confirmation were entered accordingly, and this appeal was prosecuted therefrom.

Section 47 of the Local Improvement act of 1897 (4 Starr & Cur. Stat. p. 179,) invests the court with power to revise and correct the assessment roll and to change and modify the distribution of the total cost of an improvement between the public and the property benefited, and provides that the determination of that court of the distribution of the cost of the improvement between the public and the property to be assessed shall be conclusive, and shall not be subject to review on appeal or writ of error. We cannot, therefore, consider the contention of counsel for the appellants that the court erred in refusing to require the city to pay some portion of the cost of the proposed improvement.

It appeared from the testimony of all of the witnesses produced on the hearing, both those who gave testimony on the part of the appellants as well as those for the city, that West Randolph street from Desplaines to Halsted streets, a distance of two blocks, is of the width of one hundred and fifty feet and is occupied for the purposes of a produce or truck market, and is known as "Haymarket Square;" that the business transacted there is for that reason quite large and that the property abutting on the square is in great demand by produce and commission men and wholesale gro-

cerymen, and that said property has increased in value, and is now worth much more than property on West Randolph street to the east or west of the Haymarket Square; that the lots at the south-west and north-west corners, respectively, of Halsted and West Randolph streets,—those on the north-west corner being the property here involved,—are at the western limit of said Haymarket Square, and were and are of greater value than lots on either side of West Randolph from Halsted street to Sangamon street, the latter street being the western limit of the proposed improvement. Lot 18, which is at the north-west corner of Halsted and West Randolph streets, was estimated by the witnesses produced on behalf of the appellants at from $1200 to $1500 per front foot, and by the witnesses produced by the city at not less than $850 per front foot. The witnesses in behalf of each of the litigants testified that the lots along West Randolph street from Halsted to Sangamon streets became less and less valuable as they were more remote from Haymarket Square. The witnesses for appellants valued lot 17, being the second lot from the north-west corner of Halsted and West Randolph streets, at from $700 to $750 per front foot, being little more than one-half of the value of the corner lot as estimated by them. The witnesses for the city estimated the value of lot 17 at from $250 to $300 per front foot less than lot 18.

The theory of the witnesses who testified for the city was, that the produce and truck market would extend along the street as proposed to be widened, and that as a result thereof the property abutting thereon as far as widened would be benefited and increased in value, and that the remainder of each of the lots, after the thirty-five foot strip had been taken from the front thereof, would be of the same value as the entire lot before the street was widened,—that is, that each lot would be increased in value in an amount equal to the value of the thirty-five foot strip to be taken from it. The jury accepted this theory as correct and appli-

cable to each of the lots and returned their verdict accordingly,—that is, assessed back upon the remainder of each lot along each side of the street, throughout the entire length of the improvement, the amount allowed as compensation for that part of the lot taken. This theory leaves out of consideration the fact that appellants' lot 18 already fronted practically on Haymarket Square to the extent of the thirty-five feet at the south end of the lot, and that it already had a portion of the advantages and benefits to be derived from a frontage on the market. The arbitrary plan adopted by the jury of uniformly assessing as for benefits against the remainder of each of the lots after thirty-five feet of the front thereof had been taken for the widening of the street, an amount sufficient to pay or equal the value of the part of the lot taken, manifestly operated unjustly as to appellants' lot 18, and also in a degree as to their lot 17, which was situated in such close proximity to the Haymarket as that, as the testimony of all of the witnesses tended to show, the benefits of that mart extended, in a degree, also to it. The lots belonging to the appellants were differently situated, with reference to the benefits to accrue from the widening of the street, from lots two and three blocks away from the western limits of the Haymarket Square, and the general plan of assessing benefits to all the parts of the lots not taken along the street for the distance of three blocks could not be applied to the appellants' lots without working an injustice to them, in that it assessed as benefits to their lots the benefits of the market already in a great degree enjoyed by them.

The judgment is palpably wrong and is reversed, and the cause will be remanded. *Reversed and remanded.*