# CASES DETERMINED

### IN THE

# SUPREME COURT OF ARKANSAS

KIRST v. STREET IMPROVEMENT DISTRICT No. 120.

Opinion delivered March 30, 1908.

1. IMPROVEMENT DISTRICTS—MODE OF ASSESSMENT.—Section 27 of art. .. Const. 1874, providing that assessments for local improvements in towns and cities "shall be *ad valorem* and uniform," does not prohibit assessments made, not according to the value of the property itself, but according to the value of the benefits to. the property. (Page 9.

2. SAME—BOARD OF ASSESSORS—DURATION OF EXISTENCE.—The board of assessors of an improvement district, provided for by Kirby's Digest, § 5676, is intended to exist until the district is paid out, and there is no further service for it to perform. (Page 10.)

3. SAME—POWERS OF CITY COUNCIL.—The powers of city councils in the matter of local improvement districts are prescribed by the statute, and the council possesses no authority not conferred upon it either in express terms or by necessary implication. (Page 11.)

4. SAME.—City councils are authorized by Kirby's Digest, § § 5679, 5680, to hear appeals of property owners from the action of the board of assessment and to certify their findings to such board; but not to reopen the entire assessment, nor to equalize the various assessments, nor to give relief to property owners not appealing. (Page 11.)

5. SAME—REMEDY AGAINST DISCRIMINATORY ASSESSMENT.—When, after the hearing of the appeals and the correction of the assessment list of an improvement district to conform to the findings of the city council, it appears that the several assessments of benefits are unjust, discriminatory and not uniform, a property owner in the district may, within thirty days after publication of notice of the passage of the ordinance imposing the assessment, institute legal proceedings, as provided by Kirby's Digest, § 5685, to correct or invalidate the assessment. (Page 12.)

6. SAME—POWER OF ASSESSORS TO MEET.—Two members of a board of assessment of an improvement district are not authorized to act as a board in the absence of the third member and without notice to him. (Page 13.)

7. SAME—POWER OF ASSESSORS TO RECONSIDER ASSESSMENT.—When the board of assessors of an improvement district file their assessment list, and notice thereof is given as required by Kirby's Digest, § 5678, such list becomes subject to the action of the council on appeals and of the courts on timely attack, and the council has no authority to return it to the board of assessors for reconsideration. (Page 14.)

8. SAME—WHEN ASSESSMENT ENJOINED.—Chancery will, in a timely suit, enjoin the enforcement of an assessment for a local improvement district if such assessment as a whole was arbitrary and not according to benefits. (Page 14.)

9. SAME—MODE OF ASSESSING PROPERTY.—In determining the benefits to accrue to each piece of property in an improvement district, as required by Kirby's Digest, § 5677, the assessors are required to make a fair and just estimate of the benefits which each tract of land, including buildings, will receive by reason of the improvement, and may adopt a percentage of the valuation of the property, including the buildings, as the value of the benefits, if in their judgment such a method best reaches the true measure of benefits thereto, or may adopt any other method that will reach the same result. (Page 15.)

10. SAME—ATTACK ON ASSESSMENT—EVIDENCE OF ASSESSORS.—In a direct attack upon the assessment of a local improvement district, the testimony of the assessors themselves is competent to show what matters entered into their estimate of the benefits to the property, in order to determine whether essential elements were arbitrarily disregarded or ignored by them. (Page 15.)

11. SAME—WHEN ASSESSMENT ENJOINED.—Where the evidence shows that the assessment of benefits in an improvement district was made practically upon a frontage basis, entirely excluding the valuation of the property, equity will enjoin its enforcement. (Page 16.)

12. SAME—LIMIT OF COST OF IMPROVEMENT.—Kirby's Digest, § 5683, providing that "no single improvement shall be undertaken which alone will exceed in cost twenty per centum of the value of the real property in such district as shown by the last county assessment," does not limit the amount which may be assessed against each particular piece of property to twenty per cent. of its value, but applies to the property of the entire district; the only limitation as to any particular tract being that the assessment shall not exceed the actual value of the benefit received. (Page 20.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart*, Chancellor; affirmed.

STATEMENT BY THE COURT.

Street Improvement District No. 120 was organized for the purpose of paving Main Street in the city of Little Rock,

from Eighth to Twenty-fourth streets.   No complaint is made against the organization or of any proceedings prior to the making of the assessment of benefits by the board of assessors. The original assessment (hereafter called first assessment) was made by the entire board of assessors, and filed with the city clerk, who in turn published the notice as required by the statute.   Within the ten days from the date of the publication appeals or protests were filed by Kate C. Collins and twenty-eight other owners of property in the district, asking for a correction of their assessments.   Shortly thereafter two members of the board of assessors filed with the city clerk a formal communication, addressed to the mayor and city council, requesting that the assessment book be returned to the board of assessors for reconsideration.   They stated that they were doubtful, at the time the assessment was made, as to whether they had adopted the proper method or basis upon which the benefits should be ascertained, and asked that the assessment book be returned for a further consideration, and for further legal advice and investigation as to the benefits to be derived, before making a further and final report to the council.   A few days thereafter these two members of the board filed with the city clerk another formal communication, addressed to the city council, stating that the other members of the board had gone to Europe, and might not return for several months, and asking for the appointment of another in his place.

The city council referred the petitions, protests and appeals of the property owners, the book of assessment and the communications of the board of assessors above mentioned to the ordinance committee for consideration, recommendation and report to the council.   That committee made a report to the council, in which they recited that the property owners objecting to said assessment had just causes or grounds for complaint against same; that the entire assessment was arbitrary—largely a matter of guess work, discriminating in favor of the most valuable and against the least valuable property in the district; and that it was, in the judgment of the committee, unjust, unequal and not in accordance with law and equity.   The committee further reported that it was impractical to correct the assessment, and recommended that the book of assessment be returned

to the board of assessors for the purpose of reconsideration and correction. On motion, the city council adopted the report of the committee, and ordered the book of assessments returned to the board of assessors, as recommended. Thereafter two members of the board of assessors, in the absence of the other member in Europe, and without notice to him or any opportunity for him to be present or participate, proceeded to make a new assessment, and were about to file the same with the city clerk. At this point M. Kirst and a number of other property owners of the district filed their original bill in this case in the Pulaski Chancery Court, praying for an injunction prohibiting the filing of the second assessment. W. L. Terry and numerous other property owners, who had filed appeals with the city clerk from the action of the board in making the first assessment, intervened in said cause. The plaintiffs in the original bill afterwards filed an amended bill, alleging that the second assessment was null and void, praying that the assessors be enjoined from filing, and all parties connected therewith from proceeding to enforce, the same, and asking that the first assessment be declared valid, subject to the hearing of the appeals of the protesting property owners. The defendants and the interveners filed answers and cross-bills, praying that the first assessment be set aside, cancelled and held for naught, that the second assessment be ordered to remain on file with the city clerk, and that the defendants be permitted and ordered to proceed with its enforcement as the legal and valid assessment of the board.

Testimony of two of the assessors and several real estate agents, together with the county assessment and other documentary evidence, was introduced in evidence.

Upon the final hearing the chancery court enjoined the enforcement of both assessments. The plaintiffs have appealed from the action of the court in enjoining the enforcement of the first assessment, and the defendants and interveners have by cross-appeals appealed from the action of the court in enjoining the enforcement of the second assessment. The testimony and other facts are sufficiently set out in the opinion.

*J. W. Blackwood,* for appellants.

1. The power of special assessment is "based upon the theory that the owner of the property assessed is to receive a benefit corresponding to the amount assessed, and that this is to be paid to meet the cost and expense of the improvement. It is, therefore, of no consequence what the value of the lots may be, provided the enhanced benefit is equal to the assessment." 172 U. S. 270; 69 Ark. 76; 71 Ark. 27; Hamilton, Law of Special Assessments, 3, 50, 96, 106, 109, 179, 183, 192. It is in the discretion of the Legislature to provide the basis of the assessment, whether of benefits or *ad valorem.* 69 Ark. 76; 71 Ark. 27. And the Legislature, by its act of May 3, 1901, Kirby's Digest, § § 5676 *et seq.,* exercised this discretion and provided for the assessment upon the basis of benefits alone. The doctrine that the assessment must be according to benefits received (172 U. S. 270) has now been overruled, and that case, in its main features, is still in force. Cases *supra;* 181 U. S. 324; *Id.* 371; 197 U. S. 430; 187 U. S. 546; 188 U. S. 516; 195 U. S. 359;; 205 U. S. 135; Hamilton on Assessments, § 233 *et seq.*

2. There was no authority of law for referring the assessment back to the assessors. Their power was at an end when they made and filed their assessment, and property owners who were not satisfied with the assessment had the right to appeal to the city council in the manner provided by the statute. Kirby's Digest, § § 5679, 5680; 41 N. J. L. 90; 51 N. J. L. 109; *Id.* 544. The action of the assessors was conclusive, and the burden of proof is on those who attack the validity of the assessment. 84 Ark. 257. The council has no authority except that conferred upon it by the statute. 71 Ark. 24.

3. The second assessment, made in the absence of one of the board of assessors, and without previous notice to him, is void. 160 Ill. 611; 148 Ill. 221; 170 Ill. 316; 79 N. E. 962; 71 Ark. 24; 224 Ill. 617.

4. The statutory provisions limiting the cost of an improvement to twenty per centum clearly applies to the entire property of the district, not to the property of each individual property owner. Kirby's Digest, § § 5683, 5716; 59 Ark. 159; 67 Ark. 44.

5. Testimony as to how the assessors arrived at their

decision is incompetent.    48 Ill. 285; *Id.* 296; 130 Ill. 323; 168 Ill. 162; 66 Ill. 256.

*W. Burt Brooks* and *De E. Bradshaw,* for appellees.

1. The statute limits the assessment of benefits to 20 per cent. of the valuation as fixed by the county assessor. Kirby's Digest, § 3717. The plan contended for by appellants might easily result in practical confiscation of property of small value situated in the proposed district, because the owner of a lot of small value would be compelled to pay as much for the improvement as the owner of a lot of many times its value. 83 Ark. 54. Appellants' contention that the twenty per centum limitation applied to the whole of the property of the district, and not to the property of each individual owner, is contrary to the intent and spirit of the statute, as well as in conflict with the Constitution, art. 19, § 27. 42 Ark. 162; 32 Ark. 38; Kirby's Digest, § § 5456, 2906, 5683; 48 Ark. 252; Sutherland on Stat. Con. par. 288.

2. The assessment by the board of assessors was not an assessment of the benefits to be received by the lot owners by reason of the improvement, but was merely an arbitrary apportionment of the cost of the improvement upon the various lots in the district, without respect to whether the lot received so much benefit or not. The Constitution provides that the assessment shall be *ad valorem* and uniform. The statute provides that the board of assessment shall assess to the best of their knowledge and ability the value of all benefits to be received by each landowner by reason of the proposed improvement as affecting each of said lots within the district. Kirby's Digest, § 5677; Cooley on Taxation 660; 54 Cal. 536; 40 Wis. 315; 69 Ark. 76; 71 Ark. 27; 70 Ark. 466; 48 Ark. 382; 59 Ark. 537; 64 Ark. 561; Hamilton on Special Assessments, § § 235, 236, 240, note, 231; 148 Ill. 632; 150 Ill. 80; 147 Ind. 500; 49 L. R. A. 797.

3. Owners may appeal from the assessment to the city council, which shall hear the matter *de novo.* Kirby's Digest, § 5679. It shall enter on its minutes the result of its finding, and cause a copy to be certified to. the board of assessors; and if any change has been made by the council, the assessors shall

make their assessment conform thereto.  *Id.* § 5680.  If the council has the right to refer the assessment back to the assessors for corrections, which right the statute clearly confers, has it not also the right to refer an illegal assessment back for modification and correction?  .

4.  The assessment by the two remaining members of the board, the third having gone to Europe, was authorized by law. Kirby's Digest, § 7821; 36 Ark. 446.

*W. L. Terry,* for interveners. .

It is contended in behalf of the minority ·in value:   (1) The first assessment was violative ·of *ad valorem* clause in art. 19, § 27, Const.   (2) Of the requirements of the act of May 3, 1901.   (3) If it is authorized by the act of May 3, 1901, then the act itself is violative of the Constitution of the State. (4) The second assessment (correction of the first) must, when properly acted on by the city council, remain the only valid assessment.   (5)  Appellants are estopped to claim that the council failed to perform the duty allotted to it by the statute. Art. 2, § 22, Const.; art. 12, § 3, *Id.;* 42 Ark. 382; 172 U. S. 285; 64 Ark. 561; 69 Ark. 77; 70 Ark. 467; 84 Ark. 390; Kirby's Digest, § 5679; Cooley on Taxation (2 Ed.), 660; 69 Ark. 76; 32 Ark. 38; 21 Am. Rep. 684; 2 Dillon, Mun. Corp. (4 Ed.), § 761, p. 934; 187 U. S. 543; 188 U. S. 517; 125 U. S. 357.; 181 U. S. 329.

ASHLEY COCKRILL, Special Judge, (after stating the facts.) This appeal involves the construction of our improvement district laws relating to the assessment against the property in the district of the cost ·of the improvement, and proceedings incident thereto.

Under our statutes in force prior to 1899, the cost of a local improvement was assessed against the real property in the district by an ordinance of the council levying an assessment of a percentage of the value of the property, as shown by the last county assessment, sufficient to pay for the cost.  The Legislature of 1899 changed this by adopting a method requiring a board to assess the value of the benefits accruing to the real property, and the council to make an assessment or levy on the property based on those benefits.  Subsequent Legislatures

have made additional amendments, still adhering, however, to the benefit assessment scheme. The result is that today our improvement district laws have a body and many basic provisions adopted under and in consonance with the old plan of assessing according to value of property, with the new method of assessing according to benefits rather awkwardly injected by way of amendment. These methods of assessment being radically different, it is a matter of no little difficulty to construe the various acts as a harmonious whole. In endeavoring to do so, however, it is helpful to refer briefly to the principles of law governing local assessments, and to compare these two different methods of assessment.

Special assessments for local improvements find their only justification in the peculiar and special benefits which such improvements bestow upon the particular property assessed. Any exaction in excess of the special benefits is, to the extent of such excess, a taking of property without compensation. Notwithstanding those principles so firmly settled, and in spite of *Norwood* v. *Baker,* 172 U. S. 270, it has been repeatedly held by the Supreme Court of the United States and this court that an act of the Legislature providing for the assessment of the cost of a local improvement according to the value of the property itself is not arbitrary, and is not in conflict with the Federal Constitution. These decisions are based on the principle that it must be assumed that the Legislature, in adopting such a method, has determined that the amount of benefits will accrue in proportion to the value of the property itself, and thus the assessment is still according to benefits, within the meaning of the law. The old act, therefore, adopting the plan of basing the assessments on the value of the property, was not in conflict with either the Federal or State constitutions. But it was entirely within the discretion of the Legislature to adopt the new plan, and it matters not whether this change was induced by the misconception of what was decided in *Norwood* v. *Baker,* 172 U. S. 270, or whether it was made because the Legislature determined the benefit method adopted to be the most equitable and just way of attaining uniformity and equality in the apportionment of local assessments. It is of no concern to the courts what was the controlling cause of the

change of plan.  Sufficient it is that the Legislature in the act of 1899 and in subsequent amendatory acts has clearly adopted the plan of assessment according to the benefits, in place of that assessing according to the value of the property.

It is contended by counsel at the outset that sec. 27 of art. 19 of our Constitution, providing that local assessments shall be *ad valorem* and uniform, prohibits any assessments not made according to the value of the property itself.  It is argued that *"ad valorem"* means according to the value of the property, and that any assessment of benefits, not reached by taking a proportionate part of the value of the property itself, is prohibited by the Constitution, and that an act requiring an assessment made in any other way is in that respect unconstitutional.

The phrase *"ad valorem"* means simply according to value. There is nothing in the Constitution to indicate that it means according to value of property.  This constitutional provision does not attempt to fix the thing or basis according to the value of which the assessment against the property is made. Its only mandate is that the assessment against the property shall be based on value, as distinguished from some other standard, without in any way expressing or implying that the basis shall be the value of the property itself.

According to the statute under consideration, the basis of the assessment against the property is benefits.  The board of assessors is required to "assess the value of the benefits to accrue" to each lot in the district.  That done, the basis is fixed. The council then levies against each lot that percentage of the value of the benefits thus assessed by the board necessary to pay the cost of the improvement.  The estimate of the value of the benefits made by the assessors is thus the basis upon which the council afterwards fixes and levies the assessment against the property.

Under the old plan the county assessor valued the property itself, and the council levied against the property a percentage of that value; under the present plan the board of assessors values the benefits, and the council levies against the property a percentage of that value.  Both plans conform to the *ad valorem* and uniform provision of the Constitution.  While neither is in conflict with the Federal Constitution, the present

benefit plan of assessment more logically conforms to it and to the principle that the basis of the assessments is benefits. This view of the meaning of the phrase *"ad valorem"* in our Constitution was adopted in *Ahern* v. *Board,* 69 Ark. 76. See *Chamberlain* v. *Cleveland,* 34 Ohio St. 565; *Jersey City* v. *Vreeland,* 43 N. J. L. 638.

After the assessment list had been properly filed with the city clerk, and within the ten days allowed, numerous property owners in the district filed with the city council appeals from the action of the board of assessors, setting up that the assessment of benefits against their property was in excess of actual benefits received and praying for a correction of the assessment against their property. Two members of the board filed a formal communication with the council, stating that they were in doubt whether they had estimated the benefits upon a proper basis, and asking for a return to the board of the assessment list for reconsideration and re-assessment. Pursuant to the report of a committee appointed to investigate the matter, the council, by adopting the report, found that the property owners objecting to said assessment had just grounds for complaint; that the assessment of benefits was arbitrary, discriminatory, unequal and unjust; that it would require more than the time of one regular meeting of the council to go into the various matters and questions involved, and that, as the board of assessors had asked for a return of the assessment list with a view to reconsider and correct the same, such a course might thus obviate the objections made in said petitions, protests and appeals. The council, therefore, ordered that the assessment list be returned to said board for the purpose of reconsideration and correction, and that in the meantime said petitions, protests and appeals lie on the table subject to call. The legality of this action of the council is challenged.

Counsel argue, first, that when the board filed its assessments its powers ceased, and that there was no board left to which to refer the assessment. The board of assessors is likened by counsel to a jury that has rendered a verdict and separated.

The only sections of the statutes bearing on this subject are as follows:

Kirby's Digest, section 5679. "Any one whose real estate is embraced in said assessment may at any time within ten days from the giving of said notice file with the city clerk in writing his appeal from the action of said board in making said assessment of his property, which appeal shall be heard and disposed of at the next regular meeting of the city council, and on such appeal the matter shall be heard *de novo* on such evidence as may be adduced on either side."

Section 5680. "The city council shall enter on its minutes the result of its finding on any such appeal, and shall cause a copy of its findings to be certified to said board of assessors, which shall make its assessment conform thereto, if any change has been made therein by said city council."

The powers of the board do not cease upon the filing of the assessment list, because the statute expressly provides that it shall make such corrections in the assessment list as may be certified to it by the council. But, more than that, section 5687 of Kirby's Digest provides that the assessment may be annually readjusted according to additional improvements placed upon the lands when a succession of collections are necessary to pay for the improvement. This statute evidently contemplates, and we hold, that the board of assessors exists as such until the district is paid out, and there is no further service necessary for it to perform.

Did the council have the power under the statutes to refer the assessment back to the board of assessors?

The powers of the city council in the matter of local improvement districts are prescribed by the statute, and the council possesses no authority which is not conferred upon it either in express terms or by necessary implication.

The first section of the statute quoted provides merely for the appeal of a property owner from the action of the board in making the assessment "of *his* property," and that on his appeal the matter shall be heard *de novo* on such evidence as may be adduced *on either side*. The next section provides that the council shall enter on its minutes the result of its finding on any such appeal, and that the board of assessors shall make its assessment conform thereto, if any change has been made by the council. It is clear that the only authority given to the council

by the statute is to make its findings on the appeal of the individual property owner, and to certify the same to the board of assessors, and it then becomes the clerical duty of that board to make the change in the assessment thus certified to it ,by the council. The purpose of the statute is to give an aggrieved property owner an oportunity to have his particular assessment reduced to the value of the benefit. The issue is restricted to the value of the benefit to the particular lot involved in the appeal. No provision is made for the entire assessment list to be presented to the council, and there is no provision giving other property owners not appealing, notice of the appeals or an opportunity to be heard. If the Legislature had intended that there should be a general re-apportionment of the entire assessment upon the appeals, it is fair to presume that provision would have been made for notifying others interested.

The language of the statute is unambiguous, and it would take, not only a liberal construction to hold that the council had the right to reassess the property or refer the list back to the assessors for that purpose, but also a reading into the statute of something that is not there.

Under these statutes the council has no general supervisory jurisdiction over the board. If no appeal is taken from the assessment of the board of assessors, the council has no power to interfere with it. If a property owner appeals, its only power is to correct the particular assessment involved. At this stage of the proceedings the council, and ordinarily the property owner, does not know but that, when the appeals are settled, uniformity and equality will result. But in any event no authority is given the council to delve into that question. Its authority is limited to acting upon such appeals as are before it, and, when they are settled, to levying the assessment by ordinance.

But, it is argued, the owners of property which has been assessed below the real value of the benefits to accrue to it will not appeal to the city council, and it may happen that a mere lowering of the estimate of benefits in the cases appealed would be a wholly inadequate relief. It is said that the appealing owner has a dual interest to be conserved, the right to have the estimate of benefits placed upon his property reduced and the estimate of benefits to the property of owners who have not

appealed raised to the actual value of the benefit. It is urged that, if the latter should not be done, there would be no uniformity in the assessments, the burden of the improvement would be inequitably imposed, and the improvement itself might be defeated. We think that the statute makes ample provision for such a contingency. When the appeals have been disposed of by the city council, and the list of the assessment of benefits has been corrected by the board of assessors to conform to the findings of the council, it can be definitely ascertained whether the assessment of benefits is lacking in that uniformity which the Constitution requires. Another section of the statute provides as follows: "Within thirty days after the passage of the ordinance mentioned above the recorder or city clerk shall publish a copy of it in some newspaper published in such town or city for one time; and all persons who shall fail to begin legal proceeding within thirty days after such publication for the purpose of correcting or invalidating such assessment shall be forever barred and precluded." Kirby's Digest, § 5685.

When all of its provisions are considered, it is seen that the statute furnishes a remedy for every case: If the benefit to a particular lot has been estimated above its value, the remedy of the owner is by appeal to the city council within ten days after the publication of notice of the filing of the assessment list. If, after the hearing of the appeals and the correction of the list to conform to the findings of the council, it appears that the several assessments of benefit are unjust, discriminatory, and not uniform, the individual owner may, within thirty days after the publication of the notice of the passage of the ordinance, institute legal proceedings in the proper forum for the purpose of correcting or invalidating the assessment. The two provisions give to the owner his day in court for remedying any grievance that he may have, and, if no steps are taken within the time limit specified, the assessment of benefits becomes conclusive.

The fact that two of the board of assessors, in the absence of the third and without notice to him of their intention, requested the council to refer the assessment list back to the board, suggesting a doubt whether they had made the assessment upon a proper basis and the need of fuller legal advice, does not help matters, first, because they were not authorized to act as a board

without notice to the third; and, second, because when the first assessment was filed and the notice published it was subject only to the action of the council on appeals and of the courts on proper and timely attack. Their pleas for a return of the list gave no power to the council to return it.

The report of the ordinance committee to the effect that the appeals were too numerous to be heard at one meeting, and that a reference of the list back to the board might obviate the trouble of passing on the appeals, also goes for naught. The council did not have to pass upon all the appeals in one meeting. It was authorized to take such time as necessary, and to avail itself of the benefit of reference to appropriate committees, provided the council itself finally and actually acted on the appeals.

We hold that the council had no power or authority to refer the assessment list back to the board. While this is true, still the complaining property owners appealing to the council had the clear right to apply to a court in some appropriate proceeding to attack the assessment for want of uniformity or for other sufficient cause, until thirty days after the publication of the assessment ordinance. If no attack had been made within that time, the assessment would have been final. But these property owners by cross bills in the chancery court did assail the validity of the assessments in apt time, alleging, in substance, that the assessments as a whole were arbitrary and not according to benefits, and praying that the entire assessment be declared void, and that its levy and enforcement be enjoined. This was a timely and appropriate attack on the validity of the assessment as a whole, and the issues relating to the character of the assessment and the true basis upon which it was made were clearly and properly presented to the court for determination.

The next question arising is whether the chancery court was justified in holding the first assessment void.

The statute requires the board to assess the value of the benefit to accrue to each piece of property. Kirby's Digest, § 5677. This means that the assessors shall, from their knowledge, experience, observation and judgment, make a fair and just estimate of the benefit which each particular piece of property will receive by reason of the improvement. They must consider its value, superficial area, frontage, location, the im-

provements thereon, relation to business or other centers, and every factor which, in their judgment as a board, would go to make up the sum total of benefits. The true inquiry is, what will be the effect of the proposed improvement upon the market value of the real property, including the buildings thereon? The board may consider what the property is then fairly worth in the market, and what will be the value when the improvement is made. Consideration should be given to all facts and circumstances tending to show special benefits received from the improvement not flowing to the community at large. The benefits, if any, to the buildings on the land cannot be arbitrarily disregarded. There are cases holding that only the benefits accruing to the land as such should be considered, and that the enhancement in value to the buildings should not be considered. Whether those cases are right or wrong, the statute in this State contemplates that any benefit accruing to the real property, including buildings, shall be considered. The proviso to section 5677 of Kirby's Digest above referred to, expressly declaring that the assessments may be annually readjusted according to additional improvements placed upon the land, carries out that idea, because, if the benefits to buildings subsequently erected are to be considered in readjusting the assessment, it follows that the benefits to buildings already erected should be considered. Whether the buildings actually receive any benefit from the proposed improvement, and, if so, to what extent, is a question of fact for the board of assessors. No more definite rule can be laid down. The board of assessors may very properly adopt a percentage of the valuation of the property including the buildings as the value of the benefits, if in its judgment such a method best reaches the true measure of benefits to each piece of property, or it may adopt any other method which will reach the same result.

Guided by these rules, does the evidence justify a condemnation of the first assessment? The testimony on which the complaining property owners chiefly base their charges against the assessment is that of the assessors themselves, and it is urged that they are not under the law competent witnesses to impeach their own assessment. Several Illinois cases are cited to the effect that the testimony as to how the assessors arrived

at their decision is incompetent; that they cannot be interrogated as to their acts, and cannot be called as witnesses to impeach their own report. All of these, however, are cases where the assessment has been duly filed, ratified and confirmed by the council or other proper authorities. The question is raised in them by property owners resisting the collection of the assessment, and not in some proceeding that can be regarded as a direct attack on the assessment.

The validity of this assessment is assailed in this case in a direct and timely attack in a court of equity. The interveners in this case charge that the assessors acted arbitrarily, with the result of an assessment, as a whole, grossly inequitable, unjust, unfair, unequal, disproportionate, discriminatory, and therefore not uniform. The truth of these charges and the validity of the assessment is thus the question presented to the court. The question of the validity of the assessment is open to attack in this direct proceeding, just as much as it would be before the council on appeal, if our statutes were broad enough to include an attack of this character by appeal. The claim is made by the attacking parties that the assessors did not actually assess according to benefits, but made an assessment based on an arbitrary method which had no real relation to benefits. While the true inquiry thus before the court is not so much one of methods or plans as of results, still evidence of what plan was followed is important as throwing light on the question of whether a proper assessment has resulted. The character of their assessment may be best determined by ascertaining how they made it, and testimony as to what matters entered into their estimate of benefits is highly important in finding out whether all the proper elements of benefit were given consideration and whether essential elements were arbitrarily disregarded or ignored. These things are best known to the assessors, and we think that their testimony about them in this case is competent. *People* v. *Jefferson Co. Court,* 55 N. Y. 604.

The evidence shows that the assessment was made in the following manner: The assessors divided the estimated cost of the improvement by the number of lots in the district, which gave them $350 as a front lot cost. Taking that as a basis, they arbitrarily began at about the center of the district and

assessed the benefit to each lot at $350, shading it slightly as they proceeded south and increasing it a little as they went north from the center.   The property in the south half of the district consisted for the most part of residence property, some of which was vacant, while that in the north half was mostly business property near the heart of the city with costly buildings located thereon.   This method of assessment therefore resulted in a grossly discriminatory assessment as compared with either the assessed or actual valuations of the property itself, varying from one to two per cent. of the value of the most valuable business property and from twenty to sixty per cent. of some of the outlying residence property.   This alone might not be sufficient to condemn the assessment, in a case where the assessors properly considered the question of value, and as a board permitted it to play such a part in their estimate of benefits as they in their judgment deemed it entitled.   In instances where the benefits and conditions are the same, a front foot rule may result, and is not necessarily improper.   But the evidence of one of the assessors in this case shows that he started out with the abstract proposition that values of the property had nothing whatever to do with the fixing of benefits in improvement districts, and that in this case he not only gave no consideration whatever to values, but could not have done so, because he was confessedly not familiar with the actual or comparative values of either the lots or buildings.   His testimony shows, not that he concluded that values did not materially affect the benefits in this particular case, but that he ignored the questions of values on principle, because he did not believe that they should properly be considered as an element of benefits under the law.   The evidence shows that the other assessors ignored valuations, not because they believed that they were not a material factor in their estimate of benefits in this assessment, but because they deferred to the opinion of the first assessor that it was not proper to consider them.   The evidence also shows that these last two assessors made a second assessment of benefits based entirely on valuation of the property, and that they not only regarded such method of assessment the proper one in this case, but that the method adopted by the board in the first assessment ignoring values was actually contrary to

their judgment. The exclusion of the consideration of values, therefore, was actually against the judgment of two of the assessors, and was arbitrary on the part of the other. In any event, neither the board, nor a majority of it, considered the question of values of the property and determined that in this particular case they were not an important factor, but, on the contrary, they all practically ignored that question entirely, under a misapprehension of their duties. In other words, the evidence convinces us that this is not a case where special benefits were valued in the proper manner, giving to values and all other elements a fair consideration, which resulted in practically a front foot assessment, but rather that a front foot basis was arbitrarily adopted, without giving consideration to value and other elements of benefits. Having thus excluded material elements of benefit from their consideration, and adopted a front foot basis in a district where valuations and conditions were widely variant, without sufficient showing that such a basis had any proper relation to benefits to the property, the assessors made an assessment which, we think, does not, as a whole, measure up to the requirements of the Constitution and law.

The facts in this case are very similar to those in *People v. Jefferson County Court,* 55 N. Y. 604. In that case an assessment was attacked by a property owner in an appeal to a county court. The commissioners who assessed the benefits certified, and one of them testified, that they had apportioned the expenses of the work according to their judgment of the value of the benefit from it to the respective parcels of land, and that they had, upon examination, determined that each acre of land was benefited to the same amount. The court said: "It was not pretended that they had made a determination of the value of the benefit to each parcel of land assessed, and upon comparing the determinations had found that they disclosed an equal benefit per acre to all or nearly all the land assessed. * * * That tax was arrived at in a different way. It was imposed at the rate of $3.25 per acre on 33 1-3 acres. This single case, with the acknowledgment of the commissioners that they fixed the benefit per acre at the same sum, notwithstanding the different character of the different parcels of property, may be regarded as showing that the commissioners adopted, as

a rule of assessment, an apportionment per acre, and not, as they professed, an apportionment according to the benefit derived from the improvement. Under the statute the question was an open one before the county court to determine upon the evidence whether it appeared that an erroneous rule of assessment had been adopted. The court was not concluded by the return of the commissioners nor by the testimony of the one who was sworn. It was to determine, on the proofs, what rule was adopted, and was then to decide whether the rule thus adopted was erroneous. Considering all the evidence, it has decided that the rule which the commissioners professed to govern themselves by was not that which they in fact applied, and in so doing has extended to the appellants, in that court, the exact measure of protection which the statute required it to afford—for the requirement of the statute was substantial, not formal, and an assessment per acre was not an assessment according to benefit, though disguised in that form. We are of the opinion that the county court, in making the decision in question, was acting within the jurisdiction expressly conferred upon it, and that the proofs before it not only justified but required the decision which was made; and that the duty of apportioning the assessment according to a real and not a formal judgment of benefit can not be evaded without disregard of the law."

In *Kersten* v. *Milwaukee,* (Wis.) 48 L. R. A. 851, a street improvement assessment, which the statute required to be according to benefits, was attacked by an injunction proceeding in a court of chancery on the charge, among others, that the assessment was arbitrary and not according to benefits. The proof showed that the assessors assessed the property based upon the cost of the work in front of the abutting lots at the uniform rate of $1.00 per front foot. It was argued that all of the board viewed the premises and assessed the benefits after such view, and that the assessment was the judgment of the three commisioners. The court said:

"The court (lower court) has found that the assessment made by the board of public works was arbitrary, and based solely upon the cost of the work in front of the abutting lots. * * * With the accompanying facts and circumstances, it

(the assessment) shows quite conclusively that the board could not have exercised their judgment in arriving at a result. That this assessment of benefits to each of the adjoining lots should correspond in each case to as many dollars as the abutting lot had feet of frontage, and that the aggregate of benefits should very closely approximate the total cost of the work, are circumstances too significant not to arouse suspicion.  *  *  * It is not enough for the board to say that they viewed the premises and exercised their judgment, if the facts negative that assertion. Here the facts cry out so loudly against the conclusion reached that we find no difficulty in agreeing with the court's estimate of the board's procedure." See also *People* v. *Reis,* 96 N. Y. S. 597; *People* v. *Buffalo,* 107 N. Y. S. 281; *Berdel* v. *Chicago,* 217 Ill. 429.

We hold that the first assessment was void, and that the court was right in so declaring, and in enjoining its levy and enforcement.

After the assessment list was referred back to the board of assessors, two of its members addressed a formal communication to the council stating that the third assessor was in Europe, and would not return for several months; that in reconsidering the assessment they would like to have the advice of a third assessor, and asking for the appointment of another in his place. The council not acting on this further than to receive and file it, the two members undertook to make a new assessment during the temporary absence of the third. Even if it be conceded that section 7821 of Kirby's Digest applies to boards of assessors, the action of two members of the board, in the absence of the third, without notice to him or opportunity on his part to be present or to participate, was unauthorized.

The statute provides that "no single improvement shall be undertaken which alone will exceed in cost twenty per centum of the value of the real property in such district as shown by the last county assessment." Kirby's Digest, § 5683. It is contended that this section limits the amount which may be as- sessed against each particular piece of property to twenty per cent. of its value, and that it was intended as a protection for the individual owner. We do not think the statute is suscep-

tible of such an interpretation. According to its plain and unambiguous language, it applies to the property of the entire district. Its purpose is to prevent improvement districts from undertaking any work which will cost more than one-fifth of the assessed value of the property therein. Whether the improvement can be made within this limit as to cost can and must be ascertained at the outset. After the consent of a majority in value of the property holders has been obtained and evidenced as required by law, the first step to be taken is the appointment of a board of improvement, which shall immediately form plans for the improvement and procure estimates of its cost. The cost being ascertained, its comparison with the value of the real property in the district as shown by the last county assessment will disclose whether it exceeds twenty per centum of that value, and, if it does, the improvement should not be undertaken, unless the plans can be so changed as to reduce the cost within the statutory limit.

At this stage of the proceedings it can not be known whether the cost of the improvement will exceed the aggregate of benefits in the district. The next step is to appoint a board of assessors to assess the benefits. If the cost exceeds the benefits, it constitutes a second barrier to the improvement, for the assessments can only be made upon the benefits. The twenty per centum clause is a limitation upon the district alone, while the value of the benefits is both a limitation upon the district and upon the ultimate liability of the individual property owner.

If the twenty per centum clause applied to each piece of property, it would destroy uniformity in the assessments and interfere with the *ad valorem* principle as explained above. The board must assess the special benefit which each lot will receive. This benefit is usually less than the value of the lot, but it may be greater. The city council must levy such a per centum of the benefits as will produce the cost of the improvement. This makes the assessment *ad valorem* and uniform as to the benefits.

Now, suppose that two lots have a value of $100 each, but one is benefited $100 and the other only $10. If the cost of the improvement requires 50 per cent. of the amount of

benefits, the first lot would have to pay $50, and the second $5. But if the twenty per centum limitation applied to each particular lot, the first could only be made to pay $20. The uniformity in the assessment would be impaired, for the first lot would only contribute 20 per cent. of the benefit which it actually receives, while the second lot would pay 50 per cent. of the benefit accruing to it.

This interpretation placed upon the statute is strengthened by the fact that another section provides that if the assessment first levied shall prove insufficient to complete the improvement, it shall be the duty of the council to make additional assessments from year to year "until 20 per centum of the value of the real property of such district shall be collected and consumed in such improvement." Kirby's Digest, § 5716. The same limitation is thus placed at the end of the district that confronts it at the beginning, and in both instances the limitation in terms applies to the action of the council, whereas it is not referred to in the section defining the duties and prescribing the proceedings of the board of assessors. We think that the statute plainly provides for two harmonious limitations: the district as a whole shall never be assessed for more than twenty per centum of the assessed value of all the real property in the district, and the individual owner shall never be required to pay a greater sum than the actual value of the benefit he receives.

An illustration of a statute limiting the amount of the assessment on the particular lot in the district is found in the following act of Ohio: "In no case shall the tax or assessment especially levied and assessed upon any lot or land for any improvement amount to more than 25 per cent of the value of such lot or land as assessed for taxation; the cost exceeding said per centum that would otherwise be chargeable on such lot or land shall be paid by the corporation out of its general revenue." Acts Ohio (1871), p. 125. The limitation in that act in plain terms refers to the particular property in the district, and, in order to prevent a lack of funds by reason of it, provides for the payment of the excess over the limitation by the municipality. Our statute is plainly not one of that character.

The decree of the chancellor, enjoining the enforcement of both assessments, is affirmed. The affirmance of the decree leaves the improvement district legally formed, with the matter of assessments still in the hands of the board of assessors, with full power to make an entirely new assessment, which, when filed, shall operate and be subject to the same rule of procedure as though it were the original assessment.