Moore *v.* Paving Improvement District No. 20, Texarkana, Ark.

Opinion delivered January 31, 1916.

1. Local improvement—basis of assessment.—A paving improvement district included nearly all of the improved portion of a certain city. *Held,* the finding of the chancellor that the assessment of benefits was properly made, was sustained by the testimony, the assessors being successful business men, familiar with the property in the district, and it appearing that they had used their best judgment in arriving at the amount of the assessments.

2. Words and phrases—description of lands—"said."—In the description of land, as "the said lot," the word "said" held to be a word of reference to what has been already spoken of or specified, and

when there is a question as to which of the antecedent things or propositions specified is referred to, it is generally held to refer to the last of such antecedent propositions or things.

3. BOUNDARIES—DESCRIPTION—CLERICAL ERROR—IMPROVEMENT DISTRICT.— In describing the boundaries of a proposed local improvement district, a certain boundary was given as being along *Block* 10, of a certain addition, continuing, the description: "thence east along * * * *said lot* 10." *Held,* that from the description and the use of the word "said" that "block" was meant and intended to be used instead of "lot," the mistake being a clerical misprison.

4. BOUNDARIES—IMPROVEMENT DISTRICT—DESCRIPTION—CLERICAL OMISSION.—The description of the boundaries of a proposed improvement district described a portion of the boundary as along a certain side of E. N. Maxwell's *Second* addition, and continued "* * * the east boundary line of lot 7, block one, of E. N. Maxwell's Addition," *Held,* although there were two additions, E. N. Maxwell's Second addition, and E. N. Maxwell's addition, that where the proof showed that E. N. Maxwell's addition was removed from the portion of the district then being described, that the omission of the word "second," in the description, would be held merely to be a clerical omission, and would not invalidate the formation of the district.

Appeal from Miller Chancery Court; *Jas. D. Shaver*, Chancellor, affirmed.

### STATEMENT BY THE COURT.

This appeal is prosecuted from a decree establishing the validity of a paving improvement district in Texarkana, Arkansas. The district includes practically all the improved part or area of said city and its validity was challenged because of an insufficient description of the boundaries thereof and because of the manner of assessment of benefits, it being alleged that the assessments were arbitrarily made upon a front foot basis and without regard to the value of the property and to whether the benefit assessed would be derived from the improvement.

The territory was divided into zones or districts by the assessors in consideration of the amount of assessment to be levied as benefits against each individual tract or piece of land. The assessors were men of long residence in the city and district and successful in their business affairs, as well as property holders therein. They were thoroughly familiar with the conditions existing,

had maps and plats of the entire city before them and the tax books of the county showing the assessed valuation of the different lots and parcels of land. They concluded that in the zone north of 9th street, the lots of the same dimension would be benefited practically in the same amount, the streets therein being all fifty feet in width, and adopted as a basis $125 as benefit to each inside lot with $150 as benefit to the corner lots and estimated the benefits to accrue to the improvements on each lot at from $25 to $125, according to the size and valuation of the houses. An additional amount was added to each lot as a benefit for putting in curb, where there was none. The property being more valuable south of 9th street and the streets nearly twice as wide, the benefits were increased to more than double the amount assessed against lots in the zone to the north, the basis for estimating benefits being there $300 for inside lots and $350 for corner lots, with $25 to $700 for improvements on the different lots, according to the size and value thereof. In the business district on Broad street and State Line Ave. the system, or house and lot basis of assessment, was abandoned largely and the benefits estimated in a gross sum because of the much greater value of the property and its location and use. This was the general plan adopted as a basis: for example, the pencil memorandum of assessments shows the assessment against three Sanderson lots on the outside edge of the district north of 9th street as follows: "Benefit to three lots $325; benefits to the house on the lots, $100—total $425. Lots 2 and 3 are inside lots and upon a basis of $125 each, the benefits to the two would be $250. Lot One, the corner, if assessed at the general basis of $150 per lot would have made the total amount of benefit assessed against the lots $400, but said lot being on the edge of the district, and getting no benefit on the north side, and subject to be included in another district, the value of the benefit to it was reduced half, making $75, which added to $250 made the total assessment of $325.

Mr. A. H. Whitmarsh, one of the assessors, testified that he was a manufacturer, and dealer in lumber, had resided in the district for twenty years, and was familiar with the property therein. They had several meetings of the Board, and never failed to have a meeting when assessing benefits. That the board viewed part of the property together during the time of assessing. That before they began work, they were shown an estimate by an engineer of the total cost of the improvement, which showed the character of the pavement to be put down in the district. That they had a map of the city, with the boundaries marked thereon, while the assessment was being made, and at one or two meetings, before any figures were made, the Board discussed the general proposition, and the best method of making the assessment. "We were trying to get the assessment fixed up in some way, and we got it about as near right as a set of men could do it. The method used, in our belief, was an equitable basis. We tried to make the assessment as fair as could be made, all the conditions considered.

T. S. Mullins, another assessor, stated that he was in the wholesale grocery business, that his company owned lots in the down-town district fronting on Front street, one block south of Broad street, which was the retail center of the city. Its property was in the wholesale district, that his residence was in the district, ten blocks from the business district, and he had resided in the district for fifteen years and was reasonably familiar with the property. That the assessors had ideas of their own about the respective values of the property assessed, but were not real estate men, and did not attempt to fix any particular values, having the county assessors values before them. "We tried to assess each division of a block, or lot, according to the benefits it would receive. We considered the property, and that the value would be enhanced the amount we assessed against each and every piece of property in town."

E. W. Frost testified that he lived within two blocks of the district, and that the assessors spent three or four

days in working out the assessments. "We commenced on the plan that we had to provide enough money to do the work, which was estimated to cost so much. We made the difference in values because there was a difference. We thought some of the lots and property worth more than lots differently located. We started in to make the assessment an amount sufficient to pay the bonds and interest, and in doing so, tried to proportion it so it would be as nearly equal as was possible for us to make it. In making our assesments, we considered the question of benefits. We were trying to fix the assessments equal to the benefits to the particular piece of property. We understood the amount we fixed would be an assessment of benefits, and that was the basis we were working on." In answering the question whether he considered the improvement would enhance in value the particular property, or benefit it to the extent of the assessment, he said "I do not think I thought about enhancing the value of the property, it was just simply an improvement that was needed, and when it was done would be of that much benefit, if it was done properly and right. The property would be benefited by the improvement in the amount the owner had to pay."

There was other testimony tending to show a great disparity in the assessment of benefits made upon certain property in different zones of the district, market value of the particular property being considered, and also that the assessment of benefits against certain property could not be reasonably explained otherwise than that it was arbitrarily made upon a frontage or front foot basis.

*M. E. Sanderson,* for appellants.

1. The assessment was not of benefits as required by law but an arbitrary appointment of the cost of improvement, without respect to benefit or not. 86 Ark. 1; 55 N. Y. 604. The rule of uniformity was broken. Kirby's Digest, § 382; 84 Ark. 259; 84 *Id.* 259.

2. The assessment against the railroads was unequal, unfair, unjust, discrimatory and not uniform. 99 Ark. 522; 86 *Id.* 1.

3. The original petition was illegal. 103 Ark. 269; 108 *Id.* 141; 71 *Id.* 556; 105 *Id.* 392; 104 *Id.* 298, etc. The chancery court cannot change or alter the boundaries as described in the first petition. 108 Ark. 144.

*Frank S. Quinn,* for appellee.

1. Where there are material omissions from the transcript this court will affirm.

2. The benefits as returned by the assessors and settled by the council are not unequal nor discriminatory. 81 Ark. 1; 97 Ark. 334; 99 *Id.* 508; 113 *Id.* 493. There was no discrimination in favor of the Cotton Belt Railway and I. Mt. Ry. Co. nor any ulterior motive on the part of the assessors. Such an agreement was approved in 103 Ark. 127-135.

3. The boundaries of the district are easily distinguished. There is no uncertainty and no inaccuracies in description. 104 Ark. 289; 115 Ark. 163. The word "Said" means "aforesaid." 34 Cyc. 1825. It refers to what has already been specified or spoken of. 34 Cyc. 1825 and note; 5 Cyc. 867 as to boundary; 79 Ark. 442 as to sufficiency of description. The boundary is certain.

SMITH, J., (after stating the facts). It is contended that the assessment by the board of assessors was not an assessment of benefits to accrue to each lot and parcel of land by reason of the improvement, but only an arbitrary apportionment of the cost of the improvement upon the several lots in the district upon a frontage or front foot basis and without regard to the value of the land and to whether the making of the improvement would result in the amount of benefit assessed against it.

This objection is urged against the validity of the assessment as a whole, it being charged that the assessors acted arbitrarily, that the assessment made is

unfair, unjust, unequal, grossly inequitable and not uniform.

Each of the assessors testified delineating the purpose in mind at the time the assessment was levied and the methods pursued in reaching the result obtained. It is undisputed that each and all of them are successful business men of large experience, property owners in the district, two having resided therein from fifteen to twenty years and the other residing just outside the district near the northwest corner. They had before them during their deliberations, maps of the city, showing the boundaries of the district and the description of each lot and parcel of land therein, as well as a copy of the county assessment list showing the value for which the lands were assessed for taxes. They did not pretend to know the actual market value of each tract of land, but were personally acquainted with each lot, the improvements thereon and conditions surrounding it. Their testimony shows that they had in mind and considered in levying the assessment of benefits against the particular tracts, all the elements that can be considered in estimating the value of lots and improvements.

It is true they divided the district into zones, and in the residential portion north of 9th street, where the streets were narrow and the houses not so valuable and the lots virtually of the same dimensions, estimated the benefits to accrue upon the lots of like size and condition in the same amount; that they divided the improvements thereon with which they were familiar, into certain classes, considering, in assessing the benefit against the land that it would result in a certain amount from the improvement thereon, estimated by ranging from $25 to $125, according to the kind and value of such improvement. They likewise estimated an additional benefit to such lots of $6.00 for the cost of curbing, where none had already been put down.

In the zone south of 9th street, where the houses were much more valuable and the streets almost double the width of those to the north, a different basis of $300 to

$350 to the lots of like width and condition, with an estimate of from $125 to $700, in one instance, to accrue from the value of the improvements considered.

In the business district, a different system was adopted, the property being more valuable, likewise the improvements, and of an altogether different kind. Here they considered the location of the property, the use in which it was being employed and its value therefor and estimated the benefits in such manner as would in their opinion make it as nearly equitable, equal and uniform as could be arrived at in the judgment of business men of long experience and accurately and intimately acquainted with the property and conditions existing.

The assessment against the railroads, their lands and trackage, was made in a lump sum, it is true, but the assessors each testified that they were familiar with the lands south of Front and Broad streets, belonging to the railroad company, and the railroad tracks thereon and that in assessing the benefits they took into account the situation of the lands and tried to make the assessment equitable and equal, so far as the land was considered, to that on the opposite side of the street occupied by business houses.

They also took into consideration the value of the railroad tracks but not the franchise and they did not assess the benefits separately of the different railways occupying the lands with their tracks, having made an assessment of the entire benefit to accrue to all of it and the railroads having agreed to the justice of the assessment and to an apportionment thereof between themselves, which was considered desirable by the assessors, who did not definitely know what particular improvement belonged to each of said companies.

It is also complained that a contract was made by the commissioners of the district with the railroad companies for the paving of Front street upon which their tracks are located and adjoining which, on the south, much of their property is situated, agreeing to credit the entire amount of the assessed benefits upon the contract

price for the pavement and that this was considered by the assessors in the making of the assessment of benefits as well as the fact that a franchise was also to be granted by the city to the railroads, for operation of tracks along Front street in consideration thereof. The assessors denied having taken these matters into consideration in assessing the benefits against the property of the railroads, or that the benefits assessed were in any way affected thereby.

While the assessors did not know the market value of all the particular pieces of property in the district, they knew the value in a general way, and that property in certain localities was much more valuable than that in others and all the elements going to make up such valuation and difference. This is nowhere disputed.

(1)  It can not be fairly said that the assessment of benefits was made arbitrarily and amounted to but an apportionment of the cost of the improvement made without regard to the value of the lands and the benefit to accrue from the improvement to be constructed. In *Kirst v. Street Improvement Dist.*, 86 Ark. 1, the court said: "The statute requires the board to assess the value of the benefits to accrue to each piece of property. * * * This means that the assessors shall, from their knowledge, experience, observation and judgment, make a fair and just estimate of the benefit which each particular piece of property will receive by reason of the improvement."

It is also well known and generally recognized that the assessment of future benefits is largely a matter of estimate and to some extent speculative, depending chiefly upon the opinions of men of sound judgment to determine what the future benefits will probably be, and it is recognized that it is impossible to find an exact standard for the measurement thereof in advance of the improvement constructed and the law does not require of the assessors the unattainable. *St. Louis & S. F. Rd. Co. v. Ft. Smith & Van Buren Bridge Dist.*, 113 Ark. 493.

The assessment made by the board may not have resulted in exact equality and fairness to every land

owner, but a great area with varying conditions and improvement was included in the district and as already said, it was not to be expected that some inequalities and injustice might not result which would be, and in many instances were in fact corrected, upon being called to the attention of the board and commissioners.

From the whole testimony considered in the light of the requirements of the law relating to the establishment of improvement districts, this court is not able to say that the findings of the chancellor are not sustained by the preponderance thereof.

(2-3) It was next alleged that the boundaries of the district were not sufficiently and definitely described and that it should have been adjudged void, because of such uncertainty. There is no claim made that the description of the district as petitioned for, organized, and as described in the publication of the ordinance establishing it varies in any way, the contention being only that its boundaries are not sufficiently defined in two particulars, as follows: After the description reaches the north boundary line of the northeast quarter of block 10, of Witherspoon's addition, it continues, "Thence south along the center of the alleys in block 9 and block 14 of Deutschman's third addition, and block 3 and block 6 of Kelley & Bramble's addition, to the north boundary line of the northeast quarter of block 10 of Witherspoon's addition to the city of Texarkana, Arkansas."

"Thence east along the north property line of the northeast quarter of said lot 10 of Witherspoon's addition and along the north property line of lot 12 in block 1 of H. A. Mann's addition to the center of the alley in said block 1 of H. A. Mann's addition."

"Thence south along the center of the alleys in block 1 and 2 of H. A. Mann's addition and through the alley in block 2 of Peek's addition to the center of Ninth street."

And further: "Thence south across Ninth street and through the alleys in block 16 and block 21 and block 37 and block 42 of the city of Texarkana, Arkansas, to

the center of the alley in block 1 of E. N. Maxwell's second addition to the said city of Texarkana, Arkansas;

"Thence east along the center of the alley in said E. N. Maxwell's second addition to a point opposite the east boundary line of lot 7, in block 1, of E. N. Maxwell's addition:

"Thence south along the said east boundary line of lot 7 in block 1, in E. N. Maxwell's second addition, and along the east boundary line of lot 2 in block 2 of said E. N. Maxwell's second addition to the center of the alley in said block 2 of E. N. Maxwell's second addition."

It will be observed that in the middle paragraph of the first description, the line continues east along the north property line of the northeast quarter of said "lot 10" of Witherspoon's addition, instead of block 10 as was the fact and as sufficiently shown by the description.

In the first paragraph reaching the northeast quarter of block 10, the description refers to said lot instead of block and is apparently a clerical error when the whole description is read together.

It was further shown by comparison with the city map, that there is or was no lot 10 in Witherspoon's addition and the word "said" before "lot 10" refers necessarily to something already mentioned. It means aforesaid: before mentioned. 34 Cyc. 1825. It has also been defined as "A word of reference to what has been already spoken of or specified, and if there is a question as to which of the antecedent things or propositions specified is referred to, it is generally held to refer to the last of such antecedent propositions or things. *Hinrichsen* v. *Hinrichsen,* 172 Ill. 462, 465, 50 N. E. 135."

It is obvious from the description and the use of the word "said" that "block" was meant and intended to be used instead of "lot," the mistake being a clerical misprision.

(4) In the middle paragraph of the second part of the description above set out, it appears that the word "second" is omitted in the last line designating the addition. The boundary line as shown by the first paragraph, after reaching the center of the alley of block 1 of E. N.

Maxwell's second addition to the city of Texarkana, Arkansas, continues thence along the center of the alley in said E. N. Maxwell's second addition to a point opposite to the east boundary line of lot 7 in block 1 of E. N. Maxwell's addition, thence along the said east boundary line to lot 7 in block 1 in E. N. Maxwell's second addition, etc.   There was in fact an E. N. Maxwell's addition to the city, but as shown a line could not run east along the center of the alley of block 1 in E. N. Maxwell's second addition to a point opposite the east boundary line of lot 7 in block 1 of E. N. Maxwell's addition, and it is apparent from the expressions used both before and after, that the word "second" was omitted by inadvertence from before the words E. N. Maxwell's addition in said paragraph, it being clearly apparent from the conditions existing and the description before and after that it was a clerical omission.

The circumstances all show unmistakably the intention to locate the line through the center of the alley in block 1 of E. N. Maxwell's second addition to the east boundary line of lot 7 in said block 1 thereof and there was no such uncertainty about the description as to prevent the property intended to be included from being definitely and certainly ascertained.   The description was sufficient to identify the lands included in the district and give notice to the owners of their assessments, and said owners could not have been mislead by it into concluding that their lands were not so included.

We find no prejudicial error in the record and the judgment is affirmed.