THE STATE *ex rel.* FRAZER, *Appellant,* v. HOLT COUNTY COURT.

Division One, November 11, 1896.

1. **Swamp Lands**: DRAINAGE: COLLATERAL ATTACK. The finding of the county court that a majority of owners of contiguous swamp lands have signed a petition for the construction of a ditch to reclaim swamp lands under the act of the legislature of 1869 (Laws, p. 63) can not be collaterally assailed.

2. ——: ——: COUNTY COURT: ADDITIONAL TAX. The county court may levy an additional tax when the original tax, for the construction of a ditch to reclaim such swamp lands, has proved insufficient.

3. ——: ——: ——: ——: MANDAMUS. Where the tax levied to pay for the construction of such ditch to reclaim swamp lands under the act of 1869 has been exhausted and all the remedies afforded by the law against the delinquent taxpayers have been abandoned by the county authorities and are barred by limitation, the holder of an unpaid warrant issued for work done on the ditch may invoke *mandamus* to compel the county court to levy an additional tax for the payment of the warrant.

4. ——: ——: WARRANT: LIMITATION. Such warrant issued in consideration of the construction of a ditch to reclaim swamp lands and protested for want of funds, is within Revised Statutes, section 3195, which provides that whenever any county warrant presented and protested for want of funds to pay "shall not be again presented for payment within five years after funds shall have been set apart therefor" such warrant shall be barred, and hence limitation does not begin to run against such warrant until funds have been provided for and are in the hands of the treasurer for its payment.

*Appeal from Holt Circuit Court.*—HON. C. A. ANTHONY, Judge.

REVERSED.

*T. W. Collins* and *T. C. Dungan* for appellant.

(1) The record and evidence disclose that every necessary preliminary step has been taken by the

county court to authorize the creating of the indebtedness, and the issuing of the warrant. (2) Where jurisdiction exists, proceedings are in nature of judgments, and can not be collaterally assailed, but are held conclusive of the rights of parties. *Lingo v. Burford*, 112 Mo. 149; *Windsor v. McVeigh*, 93 U. S. 274; *Nash v. Williams*, 87 U. S. 226; *Evans v. West*, 38 N. E. Rep. 65; *State ex rel. v. Meyer*, 80 Mo. 601; *Sheridan v. Fleming*, 93 Mo. 322, and cases cited. (3) The county court is the proper and only tribunal to ascertain and pass upon the sufficiency and legality of the various necessary steps taken, and facts existing, to authorize the making of such improvements, and providing means for the payment of the same. (4) The county court is now estopped to contradict their own record, and to show irregularities in the proceedings. The taxpayers petitioning for improvement must be assessed to pay for same and can not set up irregularities or illegalities in the proceedings. (5) The warrant is not barred by the statute of limitations, under either section 6774 or 6775, or under section 3195, Revised Statutes of Missouri, 1889. (6) Generally county warrants are not barred until after ten years. *Valleau v. Newton Co.*, 81 Mo. 591. (7) The payments made upon the warrant renew and extend the same for another statutory period of ten years. *Bender v. Markle*, 37 Mo. App. 234; *Shannon v. Austin*, 67 Mo. 485; *Haver v. Schwyhart*, 39 Mo. App. 303. (8) It is not barred by section 3196, for no funds have ever been in the county treasury since its last presentation, for its payment. *Grayson v. Latham*, 4 S. Rep. 200; *Brewer v. Otoe Co.*, 1 Neb. 373; *King, etc., Co. v. Otoe Co.*, 124 U. S. 459; *Wetmore v. County*, 34 N. W. Rep. 751.

*Geo. W. Murphy*, prosecuting attorney, and *L. R. Knowles* for respondent.

(1) It is shown, by the evidence produced on the part of the respondent, that part of the ditch tax has been paid as assessed, that part has never been paid, and part of said lands has been sold under execution for said tax, but did not bring enough to pay costs of suit. All the lands can not be sold or retaxed, under such conditions, and that is what relator asks this court to do, and the peremptory writ must strictly conform to the alternative writ. *School District v. Landerbaugh*, 80 Mo. 190; 14 Am. and Eng. Ency. of Law, p. 214, and cases cited. (2) When a *mandamus* is wanted for purposes, partly legal and partly not, the court will not enforce it by a peremptory writ limiting its effect, but will quash it. *School Dist. v. Landerbaugh*, 80 Mo. 190, and authorities cited; *State ex rel. v. Davis*, 54 Mo. App. 447. (3) The petition in this case was informal, not signed by a majority in interest of the owners of the lands benefited; therefore not such a petition as required by law (see Session Acts, 1869, p. 63); it was, therefore, void and all subsequent proceedings had under it were void. Therefore the tax can be defeated by the landowners, and a *mandamus* against the county for an additional levy would be "a vain and useless thing." The county courts are not the general agents of the counties, or of the state. Their powers are limited and defined by law, and when they exceed their statutory authority their acts are void. *Sturgeon v. Hampton*, 88 Mo. 204; *Butler v. Sullivan Co.*, 108 Mo. 630. (4) Persons dealing with such agents are bound to take notice of their powers and authority. *Andrew Co. v. Craig*, 32 Mo. 531; *State v. Bank*, 45 Mo. 538; 88 Mo. 204; 108

Mo. 630. (5) When the acts of counties are void, beyond their statutory authority, or illegal, the doctrine of estoppel does not apply. *Sturgeon v. Hampton*, 88 Mo. 204; *Ellis v. Railroad*, 51 Mo. 200. (6) A court of equity will refuse relief where the party has slept on his rights for an unreasonable length of time, and this, too, without regard to the statute of limitations. *Kroenung v. Goehri*, 112 Mo. 648; 14 Am. and Eng. Ency. of Law, p. 186. (7) And petitioner must show diligence. 14 Am. and Eng. Ency. of Law, p. 107, and cases cited, also p. 125, and cases cited. *State v. Court*, 41 Mo. 598. (8) The court may refuse relief, in its discretion, even where relator has undoubted legal right. 14 Am. and Eng. Ency. of Law, p. 215; *State ex rel. v. Railroad*, 77 Mo. 143; High on Extraordinary Remedies, art. 9. (9) In this case the county court ever refused to make payment, or make an additional levy as is shown by the record in this case. Any payment made by the treasurer subsequent to 1882 was unauthorized, and not binding on the court or county, as the county was not privy to it. *Goddard v. Williams*, 72 Mo. 131; *Loeffer v. Hoss*, 11 Mo. App. 135; 13 Am. and Eng. Ency. of Law, pp. 752, 753, and 754, and cases cited. The claim is, therefore, barred by statute. Sections 6774 and 6775, R. S. 1889. (10) Part payment, to take the demand out of the statute of limitations, must be made with the express, or implied, authority of the debtor. Mere indorsement of a credit without the privity of the maker, is not of part payment for this purpose. *Buck Hass v. Hoss*, 31 Mo. 180; *Phillips v. Mahan*, 52 Mo. 197; *Loever v. Harvey*, 20 Mo. App. 163.

Robinson, J.—This is a proceeding by *mandamus*, instituted in the circuit court of Holt county, to compel the county court to levy a tax upon the land sched-

uled and reported to have been benefited by the construction of a ditch or improvement known as Craig Ditch No. 2.

Briefly stated, the facts as shown by the pleadings are that, at the regular May term, 1875, of the county court a petition, signed by Corber, Goldberry, and others, who were owners of contiguous bodies of swamp or overflowed lands in said county was presented, asking for the construction of a certain ditch in township 62, range 39, in said county under the provisions of an act of 1869 (Session Acts 1869, page 63).

On May 7, 1875, the evidence was heard and the work was found to be practicable, and that a majority in interest of the owners of the contiguous bodies of land to be affected thereby had signed the petition and signified their willingness to pay their part of the expense and cost of the work. It was also found as a fact that due notice of the presentation of the petition had been given.

The county court appointed three commissioners to superintend the construction of the work, and these commissioners under an order of the court, viewed the lands and made an estimate of the probable cost of the work, and did all other things required by the act aforesaid. They then invited bids by sealed proposals in writing, and one Sheridan being found to be the lowest bidder, they entered into a contract with him, and the work was by him completed during that year, in accordance with the contract, and reported to the court by the commissioners, and their report was accepted and approved by an order entered of record, and a proper bond was given for the faithful performance of the work as required by law.

The commissioners made a descriptive list of sections and parts of sections, that would be wholly or in part benefited by the work, stating the owners' names

and the prospective value of the lands after the completion of the work, and also estimated the benefits which they believed would accrue to the county at large by reason of the improvement on account of the increase in valuation of the taxable property in the county caused thereby.

After the work had been completed, and upon the certificate of the commissioner, the clerk of the county court issued to Sheridan his order or warrant number 20 on the treasurer of Holt county, for the sum of $519.58 as part payment for the construction of said work under the direction and sanction of the county court dated December 10, 1877, and the warrant was on that date presented by Sheridan to said treasurer for payment and indorsement, and stamped by him "not paid for want of funds."

In 1878, for value received, Sheridan sold this warrant to relator; and on May 14, 1881, the treasurer paid relator $106.23 thereon, and same was credited in writing on the warrant, and again on March 19, 1885, $24.37 was paid by the treasurer on said warrant, and credited in the same manner upon the back of said warrant.

The petition further states that there had been no money since in the hands of the treasurer for the payment of said warrant in whole or in part, and that the same had been presented from time to time for payment and refused on account of lack of funds; that on March 13, 1882, a written application was made and filed in the county court for the levy of a special assessment for the payment of this warrant, with others then due, which was by the court refused, and the court then refused to do anything, or to make any record in the matter whatever.

Again on February 3, 1892, the relator presented a written application or petition to the county court

asking for the levy of a tax for the payment of this improvement and the outstanding warrants therefor, and the court, by an order of record, refused to make such levy, or in any way to provide for the payment thereof, and then this *mandamus* proceeding was begun in the circuit court asking that the county court be required to make an additional levy for the purpose of paying this warrant, as relator was entirely without other legal remedy in the premises.

An alternative writ was issued and a return was filed thereto, which after an unsuccessful motion filed by relator to have the greater portion of same stricken out, he filed his reply and the case proceeded to trial and resulted in a judgment against him, and a peremptory writ denied, from which judgment and order this appeal is prosecuted.

It will be unnecessary to set out the return filed by defendant, but its main features will be gained from the after comments of the court in this opinion.

At the trial the warrant was introduced in evidence; also the petition of Goldberry and others; also a copy of the record of the county court reciting the fact that due notice had been given for two weeks prior to the time of the presentment of the petition; that a majority of the landowners, etc., had declared their willingness to pay this proportion of the improvement, and the appointment of the commissioner to examine the lands decided upon, the location, character, and dimensions of the ditch, and make an estimate as accurately as practicable of the cost thereof; further that the commissioners were directed to invite bids and to award the contract to the lowest bidder, on giving bond to secure the faithful performance of the work, that the commissioners were authorized to condemn for public use in behalf of the county any public or private property necessary for the construction of the improvement, to

make a descriptive list of the land to be benefited wholly or in part, stating as accurately as practicable the owners' names, the proposed value of the land after the completion of the work, and also the estimated benefit which would accrue to the county at large by reason of the improvement on account of the increase of taxable values; to report the same to the court together with a list of the property condemned for public use, damages assessed, list of lands benefited, and a statement of the entire cost of the work, and improvements, completed within one year from the date of the appointment of the commissioners, with the costs of the preliminary survey approved by them, etc.

Next was introduced a copy of the contract entered into by the commissioners; also a copy of the contractor's bond; also a copy of the order of court approving the bond; also a copy of the commissioners' report.

This report sets forth the facts that the commissioners made a survey and estimate and invited bids, and found that Sheridan was the lowest bidder; that he gave bond for the faithful performance of the work, and to have same completed by May 1, 1876; that the commissioners made an estimate of the entire cost of the work; also a descriptive list of all the lands benefited by the improvement, with the present and prospective valuation before and after the completion of the work, and an estimate of the benefit to the county at large by reason of the increase in taxable valuations. The report also sets out a description of lands condemned in making the improvements, and after giving all costs connected with the work, stated that one half of the amount had been paid out of the road and bridge fund, leaving a balance of $363. This report was duly signed and sworn to, filed in court, and approved.

Next was offered in evidence the amended report

of the commissioners which set out the fact that, in compliance with an order of the board of appeals for this improvement, the commissioners had made an additional list of lands benefited thereby, assessed the benefit of said land at $5,235, making the total benefits assessed amount to $15,943; that they have also assessed the additional benefits to the county at large, making the total benefits to the county amount to $563; and they recommended that an assessment for the collection of taxes be placed on the assessor's books in two installments, one half to be collected on January 1, 1878, and the other half on January 1, 1879. This amended report was also duly signed and sworn to by all the commissioners and was filed and approved by all the court.

Next was introduced an order made by the county court reciting that it would sit as a board of appeals on January 16, 1877, to hear objections, if any, to the assessment or estimate made in the amended report, and ordering that three weeks' public notice be given thereof. The relator then introduced the record of the county court sitting as a board of appeals in which it is recited that, no one appearing to object to the amended report of the commissioners, it is ordered approved.

The relator next introduced in evidence a copy of his petition filed in the county court March 15, 1882, asking for an additional levy of taxes, setting forth that he was the owner of the warrant in question, and that there was about $1,600 of the taxes for the improvement yet uncollected and he prayed the court to make an additional levy upon the schedule of lands and persons affected by the improvement to pay the remaining amount due on his warrant, and for similar warrants held by other parties issued for the same improvements.

Oral evidence was also introduced, to show frequent efforts to collect this warrant, by requests and petitions to the county court for additional levies, and that the county court continually refused to act, claiming that they had the right to make only the one levy, as was made, and that as the work was not done within one year, as provided by the contract with the contractors, they had no right to pay for same, or to assess any additional taxes therefor.

Next was introduced copy of an order of the county court, dated February 3, 1892, when the court overruled the petition filed by relator praying for a levy to pay this warrant.

The defendant offered in evidence the original petition as already offered by relator and also tax books for the years 1877 and 1878, which showed, by marginal notes opposite some of the names of the landowners, that these lands had paid their taxes in full for these years; others had not paid the taxes for this improvement, and that other lands charged with the tax had been sold under judgment against them for said tax and at such sale did not sell for sufficient to pay the taxes.

These tax books were introduced over the objection of the relator, and relator excepted.

This is in substance all the evidence introduced at the trial; and upon it the trial court found the issues for the defendant, and rendered judgment refusing the peremptory writ and for costs, to reverse which relator prosecutes this his appeal.

I. The defendant's first contention is that, as the original petition filed in the county court for the proposed improvement was not signed by a majority in interest of the landowners affected, it was insufficient, and that all subsequent proceedings held under it were void, and that as the taxes to be levied to pay the war-

rant issued in part for said improvements can be defeated by the landowner, for that reason *mandamus* against the county court for the levy would be a vain and useless thing, and should not go in this case.

The county court found, as a fact, according to the disclosure of the record evidence offered in this case, that a majority of the landowners affected wholly or in part by the proposed improvement had signed the petition therefor; it also found that due notice of the proceedings had been given. The evidence shows also that the county court organized as a court of appeals and gave due notice that it would hear appeals from the assessments made by the commissioners, and that none of the property owners appeared; that this warrant held by the relator was issued after the completion of the work, and upon the recommendation of the commissioners.

The records offered in this case show a substantial compliance with the statutory requirements in such case provided, and show that the relator is entitled to the payment of this warrant, which is a judicial ascertainment and written acknowledgment of indebtedness by the county, and in fact its promissory note.

What discrepancy might appear between the number of petitioning landowners at the time of the filing of the original petition with the county court, and the number appearing on the schedule of landowners filed by the commissioners six months thereafter under the order of the court, can not be considered to affect or impair the finding made by the court that a majority in interest of the landowners did sign the petition, as same was presented to it in the first instance. The county court was the proper and only tribunal to ascertain and pass upon the sufficiency and legality of the various steps, and the facts existing to authorize the making of such improvements and to

provide the means for the payment of the same. While jurisdiction of the subject-matter on part of the county court was made to depend on the petition being signed by a majority of the owners to be affected by the improvements, still that body alone must determine whether the requisite majority have signed to authorize its assertion of jurisdiction, and when it has so determined, its judgment is conclusive (unless appealed from) and can not be collaterally assailed, either by an examination and comparison of it with other papers afterward filed with 'the court under its order in furtherance of the improvement scheme, or by evidence *aliunde* the record.

The contract for the improvement petitioned for had been made, the work done under it had been ratified, and the warrant issued to the contractor in part payment for same, by the body having charge of all the facts necessary to justify its action in that behalf; it is too late now to show that one or more facts recited in its record were not as recited, and particularly should that be so, when, as in this case, the relator is the holder for value, of the warrant by assignment, fair upon its face, with no want of jurisdictional facts appearing in the record made by' the court, to create the least suspicion that it had not been issued pursuant to legal authority.

II.   Defendant's next contention is, that, as it was shown by the evidence' that many of the owners of lands reported benefited by the construction of the drain ditch petitioned for, have paid all the tax due from them, and others have failed and refused to pay said tax, while still other lands have been sold under execution upon tax judgments for said tax and the taxes realized from such sales, all the lands can not now be retaxed under such conditions, and that the court has no power to make any further levy.

This, we think, is without merit under the facts of this case. While the courts may refuse the relief asked by *mandamus* in its discretion, in many instances, where an undoubted legal right exists, and might exercise that discretion against a petition asking an order for the levy of an additional tax when a previous tax had been made sufficiently large to cover the debt sought to be enforced, but not yet collected, or the remedies afforded by law against the delinquent taxpayers and their property had not been exhausted to avoid an unnecessary and unfair burden upon the prompt taxpayer, it could not properly be refused here, as all the remedies against the nontaxpayer have been abandoned by the county authorities, and all rights of action on the old taxes have been barred even if the officials having the matter of their enforcement and collection in charge were ready and willing to perform their duty. The case here stands as if it had been shown that the previous levies had been wholly exhausted, and, as made, were inadequate to meet and pay the indebtedness for which they were levied in the first instance.

As a proposition of law the reasons given by the county court for refusing to make an additional levy to pay this warrant, that they had only the right to make one levy, and that as the improvement was not completed within one year after the appointment of commissioners, they have no right to pay same, or to assess any additional taxes for that purpose, which seem to have been adopted by the counsel for defendant and urged upon this court for its approval, can not be sustained for a moment.

Neither the relator nor his assignor had anything to do with the matter of the estimate, the assessment, the levy or collection of the tax, and to hold that he is without a remedy and must go unpaid because of a

miscalculation or mistake of the county court, or the dereliction and indifference of the collector, or the dodging of the taxpayer, is a proposition that ought to contain its refutation in its mere utterance.

All the lands benefited can be retaxed whenever it appears that previous assessments are insufficient. Even if the assessment in the first instance was sufficient, if collected, to pay the cash in full, for said improvements, yet if after the allowance of a reasonable time for the collection from delinquents, a deficiency exists, and the legal remedies have been exhausted for the collection of taxes, or if the assessments made have been abandoned or remain uncollected, by the authorities having the matter of the collection in charge, the writ should be granted ordering an additional assessment.

BLACK, Judge, in the case of *Sheridan v. Fleming*, 93 Mo. 321, when exactly the same position was taken by the then judges of Holt county, as is taken now by the present judges, to resist the application of relator's assignor to have an additional tax levied to pay a similar warrant issued for a similar purpose as the one held by this relator here, uses this language in disposing of defendants' contention there:

"If the improvements are not completed within one year after the appointment of the commissioners, additional assessments may be made upon the county at large, and upon the owners of lands reclaimed and benefited. There is nothing in the act [for the reclaiming swamp and overflowed lands, etc.] which limits the amount to the estimate first made by the commissioners. The law does not contemplate that they must, in the first instance, report the exact amount of the work. It would be impossible for them to do this, for they must pay for the surveys, condemnation of property and the like, all of which expenses must be paid out of the fund. Neither these expenses, nor the cost of the work,

can be ascertained with accuracy in advance.   Besides, the contractor has nothing to do with the estimate; and to say that he must go unpaid because of a mistake of the commissioners in a matter over which he has no control, is manifestly unjust.   The law contemplates no such results.''

Defendant's next contention is that the payment indorsed on the warrant held by relator, March 19, 1885, was without authority, and that, as the last authorized payment on same was made on May 14, 1881, relator's right of action on the warrant is barred by the provision of section 6774, Revised Statutes, 1889, which directs that all actions upon any writing for the payment of money shall be commenced within ten years after the cause of action thereon has accrued, and that as relator's right of action on the warrant was barred at the institution of these proceedings *mandamus* will not lie to compel the levy of a tax to provide funds for its payment.

The relator on the other hand contends, that the payment made March 19, 1885, by the county treasurer and indorsed on the warrant on that date, was paid out of funds that had been turned over to the treasurer for the purpose of paying this or similar warrants and could not have been used or applied elsewhere, and that the payment as then made on the warrant was fully authorized and had the effect to keep the warrant alive as a legal claim against the county, until the institution of the suit.

The provision of section 6774 known as the ten year statute of limitations, according to a recent holding of this court in the case of *Wilson v. Knox County*, 132 Mo. 387, does not apply to warrants of the character held by relator, but the limitation governing such paper is to be found in section 3195 of the statutes, which provides among other things that whenever any county

warrant drawn on the county treasurer "shall not be presented to the county treasurer for payment within five years after the date thereof, or, being presented within that time and protested for want of funds to pay it, shall not be again presented for payment within five years after funds shall have been set apart for the payment thereof, such warrant shall be barred and shall not be paid," etc., so that we are relieved from a discussion of the question raised as to the authority of the payment on the warrant of March 19, 1885, and its effect, in keeping the warrant from being barred by the ten year statute of limitation.

Conceding, for the sake of defendant's contention, that the payment of March 19, 1885, made on the warrant, was without authority and that the last payment upon or recognition of the warrant was in May, 1881, of what avail will that be to it under its admission and contention that since 1881 there have been no funds in the hands of the treasurer with which the warrant could be lawfully paid in part or in whole, since by section 3195, time is not to be computed against the holder of warrants of this character, until after funds have been provided and in the hands of the treasurer with which to pay same. The statute of limitation has not yet begun to operate upon this warrant and the time of the last payment made on same is a matter of no consideration in this controversy.

Neither the return filed by defendant nor the facts developed at the trial show any good reason why this warrant has not been paid or that it was improperly issued or that the amount claimed thereon is not now due, nor was any valid reason shown why an order should not go to the judges of the county court directing them to provide for the payment of same. The judgment of the circuit court is therefore reversed and the cause is remanded with directions to it to issue its

writ of *mandamus* to the county court of Holt county as prayed by relator. BRACE, C. J., BARCLAY and MACFARLANE, JJ., concur.