TURNER *v.* EDERINGTON.

## Opinion delivered May 3, 1926.

1. STATUTES—CONSTRUCTION WITH REFERENCE TO SUBJECT-MAT-
   TER.—In the construction of statutes, words are to be understood
   as used in reference to the subject-matter in the minds of the
   Legislature, and strictly limited to it.

2. STATUTES—CONSTRUCTION TO EFFECTUATE INTENT.—When the gen-
   eral intent of a statute is once clearly ascertained, general words
   may be restrained and those of narrower import expanded to
   effectuate that intent.

3. STATUTES—ASCERTAINMENT OF INTENTION.—The intention of a
   statute is to be collected either from the words, the context, the
   subject-matter, the effects and consequences, or from the spirit
   and reason of the law, and from other acts *in pari materia*.

4. STATUTES—CONSTRUCTION TO CARRY OUT INTENT.—When dis-
   covered, the intention of a statute ought to be followed with
   reason and discretion in its construction, although such con-
   struction seems contrary to the letter.

5. MUNICIPAL CORPORATIONS—IMPROVEMENT· DISTRICTS—COST OF
   IMPROVEMENT.—Crawford & Moses' Dig., § 3643, providing that
   interest on installments in drainage and other improvement dis-
   tricts is not to be construed as part of the cost of construction in
   determining whether the expenses and costs of making the
   improvement are in excess of the benefits assessed, applies only
   to drainage and levee districts, and not to local improvement
   districts in cities and towns.

Appeal from Bradley Chancery Court; *E. G. Ham-
mock,* Chancellor; affirmed.

STATEMENT BY THE COURT.

Louis Ederington, a property owner in Paving Im-
provement District No. 3 of the city of Warren, Arkan-
sas, brought this suit in equity against Cone Turner, Noel
Martin and Joe L. Reaves, Jr., as commissioners of said
improvement district, to enjoin them from making any
contract for the sale of bonds of said district, or carry-
ing out the work under the assessment of benefits.

According to the allegations of the complaint, the
estimated cost of the improvement is more than the
amount of the assessment of benefits, unless the deferred
installments of the assessment of benefits shall bear
interest.

The court overruled a demurrer filed by the defendants to the complaint. The defendants declined to plead further, and from an adverse decree in accordance with the prayer of the complaint they have duly prosecuted an appeal to this court.

*Duval L. Purkins* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Fred L. Purcell,* for appellee.

HART, J., (after stating the facts). Counsel for the defendants contend that § 3643 of Crawford & Moses' Digest applies to local improvement districts in cities and towns, and it is conceded by counsel for the plaintiff that, if the section applies, the decree of the chancellor is wrong because, if interest allowed on the deferred installments of the assessment of benefits at the rate of six per cent. per annum is not construed as part of the cost of construction, as provided in the section, the assessment of benefits will be greater than the estimated cost of the improvement, including interest.

Section 3643 reads as follows: "The amount of interest which will accrue on bonds issued by such districts and subdistricts shall be included and added to the tax, but the interest to accrue on account of the issuing of said bonds shall not be construed as a part of the cost of construction in determining whether or not the expense and costs of making said improvement are or are not equal to or in excess of the benefits assessed. When assessments of benefits are made in drainage and other improvement districts, the landowners shall have the privilege of paying the same in full within thirty days after the assessment becomes final. But all such assessments shall be made payable in installments, so that not more than twenty-five per cent. shall be collectable in any one year, against the wishes of the landowner, and, in the event that any landowner avails himself of this indulgence, the deferred installments of the assessed benefits shall bear interest at the rate of six per cent. per annum, and shall be payable only in installments as levied.

The levy of the assessment may be made by way of proportional amounts of the total assessed benefits, and interest need not be calculated until it is necessary to do so to avoid exceeding the total amount of benefits and interest.''

Section 3643 of the Digest is § 10 of act 177 of the Acts of 1913, p. 738. Act 177 is entitled ''An act to amend act No. 279 of the Acts of 1909, approved May 27, 1909, and to amend act No. 221 of the Acts of 1911, passed to cure defects in the organization of districts under the original act.'' Act 279 is a general act to provide for the creation of drainage districts in this State.

For a reversal of the decree, counsel for the defendants rely upon the rule of construction applied in *Young v. Red Fork Levee Dist.*, 124 Ark. 61. In that case the court had under consideration an act of the Legislature of 1905, which had for its purpose to provide a method for the exercise of the right of eminent domain by levee, drainage, and ditching districts. Section 1 of the act provides that ''the board of directors of the St. Francis Levee District and all other levee and drainage districts organized under the laws of the State'' are impowered to enter upon lands, etc. The court held that the statute was a general one applicable to all levee and drainage districts in the State. It would seem that the St. Francis Levee District was specially named, so that there could be no doubt of the statute applying to it, although it was general in its nature. In that case the court properly held that the meaning of the words, ''all other levee and drainage districts,'' must be sought from the entire act, including the title and the object to be accomplished. The general purpose of the act, as derived from a consideration of every section, clearly shows that it was a general statute to be applied to all levee and drainage districts.

We do not think that, when the general purpose of the legislation in the present case, appearing from a study of the original act in conection with the amendatory acts, is considered, we must give the general words

in question the broad signification sought to be placed upon them by counsel for the defendants. It is a canon of interpretation "that all words, if they be general and not express and precise, are to be restricted to the fitness of the matter. They are to be construed as particular if the intention be particular; that is, they must be understood as used in reference to the subject-matter in the mind of the Legislature, and strictly limited to it." Endlich on the Interpretation of Statutes, § 86.

"It is indispensable to a correct understanding of a statute to inquire first what is the subject of it, what object is intended to be accomplished by it. When the subject-matter is once clearly ascertained and its general intent, a key is found to all its intricacies; general words may be restrained to it, and those of narrower import may be expanded to embrace it to effectuate that intent." Lewis' Sutherland Statutory Construction, 2 ed., vol. 2, § 347 (218).

In *Woodruff* v. *State,* 3 Ark. 285, the rule is stated as follows: "That, in construing statutes, the intention of the Legislature is a fit and proper subject of inquiry, is too well settled to admit of a doubt. This intention is to be collected either from the words, the context, the subject-matter, the effects and consequences, or the spirit and reason of the law, and other acts *in pari materia.* It may not, however, be amiss to state and keep in view some of the established rules on the subject. Such a construction ought to be put upon a statute as may best answer the intention which the makers have in view, and this intention is sometimes to be collected from the cause or necessity of making the statute, and sometimes from other circumstances; and whenever such intention can be discovered, it ought to be followed with reason and discretion, in the construction of the statute, although such construction seems contrary to the letter of the statute. And such construction ought to be put upon it as will not suffer it to be eluded."

In the application of the rule to the case at bar we think that the chancery court properly held that the

words, "and other improvement districts," should be limited to such districts as could be formed under the original drainage act of 1909 and the subsequent acts amendatory thereof.

Act 279, approved May 27, 1909, as we have already seen, was an act to provide for the creation of drainage districts in this State. It contained thirty-two sections. Section 32 provides that the word "ditch," as used in the act, shall be held to include branch or lateral ditches, tile drains, levees, sluiceways, floodgates, and any other construction work found necessary for the reclamation of wet and overflowed lands. Act No. 221, passed by the Legislature of 1911, was passed for the purpose of amending the original act of May 27, 1909, and to cure defects in the organization of districts under it.

Act No. 177, passed by the Legislature of 1913, contains twenty-two sections, and was passed for the purpose of amending the original act of 1909 and the amendatory act of 1911. Thus it will be seen that the original act and the amendatory acts deal exclusively with the organization of drainage districts, and the Legislature had no other purpose in view in passing the original act or the amendatory acts. One purpose of the amendatory acts was to cure defects in the original act.

As we have already seen, the office of canons of construction is to aid the court in determining the true meaning of a statute. When we consider the general purpose of the original act and the act under consideration as amendatory of it, we are of the opinion that the Legislature meant that the words, "other improvement districts," should mean such other levee and drainage districts as might be formed and constructed in aid of the original improvement. There is nothing whatever in the original act or the amendatory acts to indicate that the Legislature had in mind any change in the law as to the assessment of benefits as applied to local improvements in cities and towns, or to any other kind of local improvements, except those provided for in the drainage statutes.

The result of our views is that the opinion of the chancellor as to the construction to be placed upon the statute was correct, and the decree of the chancery court will therefore be affirmed.