STATE EX REL. W. D. McGEE, TREASURER AND EX-OFFICIO COLLECTOR OF DUNKLIN COUNTY, MISSOURI, For The Use And Benefit Of DRAINAGE DISTRICT No. 4 OF DUNKLIN COUNTY, MISSOURI, a duly Organized DRAINAGE DISTRICT of Said County, Appellant, v. THOMAS WILSON, ET AL., Respondents.—No. 40898.—220 S. W. (2d) 6.

Division Two, April 11, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, May 9, 1949.

*David Baron* and *C. D. Bray* for appellant.

1246

1248

*Jones, Ford & Jones* for respondents.

[7] WESTHUES, C.—The Collector of Revenue of Dunklin County, Missouri, filed this suit for the benefit of Drainage District No. 4 of Dunklin County to recover assessments levied in the year 1941 for the purpose of raising funds to pay bonds issued by the drainage district in the year 1906. The trial court entered a judgment in favor of defendants (landowners) and plaintiff appealed.

The landowners as a defense contend that the laws governing drainage districts in force when District No. 4 was organized did not authorize a second assessment to be made and therefore the present levy was void. Defendants also entered a plea of res judicata. They say that this court decided this question in the case of State ex rel. v. Redman, 270 Mo. 465, 194 S. W. 260, wherein an assessment to raise funds to pay these same bonds was held to be void. The two principal questions for our decision are whether the present assessment was authorized and whether the Redman case was a legal bar against the district.

It will be necessary to relate the history of this drainage district and we shall do this as briefly as possible. In the year 1905 the district was organized under the authority of Article 4, Chap. 122, R. S. Mo. 1899, as amended by Laws 1905, p. 180. The benefits to the land, as fixed by the viewers appointed under authority of Sec. 8284, Laws 1905, p. 182, were in excess of $72,000. Pursuant to the provisions of Sec. 8288, Laws 1905, p. 184, the county court approved the report of the viewers and as authorized by Sec. 8301a, p. 189, issued bonds in the sum of $55,977.77. The court made an assessment or levy in proportion to the benefits in the sum of $36,000. Thereafter the bonds were sold for $56,077.77 and the work necessary to construct the drainage district was completed. In the year 1912 it was discovered that the assessment made in 1906 was insufficient to pay the bonds. The county court thereupon made another, or supplementary, assessment for the purpose of paying the bondholders. The landowners resisted the payment and this court in March, 1917, in the case of State ex rel. v. Redman, supra, decided that the law applicable to District No. 4 under which it was organized did not authorize the second assessment and, therefore, it was void. In the year 1913 the Legislature amended the law which was then Art. 4, Chap. 41, R. S. Mo. 1909, so as to authorize subsequent assessments. See Laws 1913, Sec. 5588, p. 274, and Sec. 2, p. 281. This court in the Redman opinion held that the law of 1913 being subsequent to the levy made in 1912 did not operate retroactively so as to legalize the assessment of 1912. See 194 S. W. l. c. 263. (3, 4). The next step was a suit brought by a bondholder in the federal court wherein a judgment was entered

against the county and the drainage district for the amount due on the unpaid bonds. See Murphy v. Dunklin County, et al., 17 F. Supp. 128, where a concise history of the case can be found. Later, a mandamus proceeding was instituted in the federal court to compel the county court of Dunklin County to make an assessment against the lands in Drainage District No. 4 in an amount sufficient to satisfy the judgment previously entered. This case was appealed and the Circuit Court of Appeals (Eighth Circuit) in April, 1941, affirmed the decision of the district court. See Drainage District No. 4 of Dunklin County, Mo., v. Murphy, 119 F. (2d) 390. In that same year, 1941, the Dunklin County Court in obedience to the writ of mandamus made the levy or assessment which is the subject matter of this suit.

██ ██ Appellant in his brief states that "The judgment in the Murphy case on the bonds and the judgment in the mandamus proceeding ancillary thereto established the legality of the additional assessments on which this suit is based and are res judicata". The defendants have devoted much of their brief to their contention that the [8] two federal cases are not res judicata as to the validity of the assessment sought to be collected. We shall pass this question and go direct to the defendants' point that the opinion in the Redman case, as defendants say, "constitutes full and complete res judicata". We have concluded that the sole question before this court in the Redman case was whether the county court possessed the power under the law as it was in 1912 to make an additional assessment when it was discovered that the original assessment of 1906 was insufficient. This court decided that the county court had no such power. If that holding was correct then, of course, it followed that the Act of 1913 could not validate an assessment which was void when made in 1912. That is all that was decided in the Redman case. See the federal cases, supra, and State ex rel. v. General American Life Ins. Co., 336 Mo. 829, 85 S. W. (2d) 68, l. c. 73. Going back to the formation of the drainage district in question, we find that the engineer and viewers, appointed under authority of Sec. 8284, Laws 1905, p. 182, filed their report with the county court and as pointed out in the Redman case, supra, 194 S. W. l. c. 263, any landowner in the district being dissatisfied with the apportionments made or the action of the viewers upon any claim for compensation or damages, was required to file exceptions before the day set by the county court for a hearing on the report. The landowners in this case did not then nor do they now question the legality or the regularity of the proceedings in establishing the district. In its judgment the county court found the benefits to the landowners in the district to be $72,513.99. The court authorized bonds to be issued in the sum of $55,977.77. It made a levy or assessment of $36,000 to raise funds to pay the bonds. Now let us suppose that the county court had made an adequate assessment at that time to discharge the bonds. Could any landowner have com-

plained or appealed and have had that question reviewed? We say not. Sec. 8292, Laws 1905, p. 185, limits the questions which can be considered on appeal as follows:

"Any person may appeal from the order of the court, and upon such appeal, there may be determined either or both of the following questions: First, whether compensation has been allowed for property appropriated, and second, whether proper damages have been allowed for property prejudicially affected by the improvements, . . ." The concluding portion of the section reads as follows:

" . . . provided, that nothing in this section shall be so construed as to authorize any appellant to stay the proceedings in the county court, or to prevent progress in the work of constructing such public ditches, drains or water-courses, or other work or improvement; but said county court may proceed with said work, and any subsequent proceedings in the circuit court shall affect only the rights and interest of the appellant in property located in such drainage district." What we are trying to demonstrate is that had the county court performed its duty when it had this matter under consideration and made an assessment sufficient to pay all of the bonds authorized, no property owner in the district could have complained or appealed and have had the question of the amount of the assessment reviewed. 28 C. J. S. 318, Sec. 31; In re Wilhelmina Drainage District v. Seeley, et al., 280 Mo. 1, 216 S. W. 530. The county court at the time the original assessment was made not only had the authority to make an adequate assessment to pay the bonds in full but had the responsibility of doing so. Note that Sec. 8301a, Laws 1905, p. 189, authorizing bonds to be issued, reads in part: "Provided, such bonds shall show upon their face the purpose for which they are issued and shall be payable out of moneys derived from such assessments and none other". The bonds in question contain the following statement: "A special assessment of $55,977.77 was levied and apportioned by said Court upon the lands of said District benefited".

The Legislature, perhaps to prevent any question of the authority of a county court to make adequate assessments to take [9] care of drainage district bonds, amended the laws and specifically authorized county courts to make supplemental assessments when needed. See Laws 1913, Sec. 5588, p. 274. The Legislature also evidently had in mind such cases as we now have before us. Note Laws 1913, p. 281, Sec. 2, wherein was provided that "All contracts entered into, all liens established and other obligations created, including warrants and bonds issued, by drainage districts heretofore organized under the provisions of said article 4 of chapter 41, are hereby declared to be valid, and the county courts shall levy sufficient tax to pay all such forms of indebtedness. The amendments contained in this act shall be deemed to be remedial in their character, shall be liberally construed by the courts and shall be construed to apply to

all districts heretofore organized, as well as to the districts now in the course of organization, or such as shall hereafter be organized under the provisions of article 4 of chapter 41 of the Revised Statutes of 1909, as hereby amended''. Since the county court had the authority at the time it made the original assessment to have made it adequate to pay all of the bonds without infringing any rights of landowners, the Legislature could without depriving anyone of any constitutional rights empower the county court to make supplementary assessments to discharge the bonds without first giving notice to the property owners of the district. In the case of State ex rel. v. General American Life Ins. Co., 85 S. W. (2d) 68, l. c. 73, 74 (1, 2) (3), it was held that the amendment of 1913 applied to drainage districts organized before the law was enacted and also that the act authorized supplementary assessments when needed to discharge bonds. Note what the court said, 85 S. W. (2d) 76 (7) (8):

'' (7) The question of the validity of the statutes authorizing supplementary assessments of benefits, as against the contention that such assessments were in contravention of the state and federal constitutional guarantees of rights of property and of due process of law, has been in judgment of this court and the federal Supreme Court time and again, and such statutes have uniformly been upheld. State ex rel. v. Holt County Court, 135 Mo. 533, 37 S. W. 521; State ex rel. v. Wilson, 216 Mo. 215, 115 S. W. 549; State ex rel. v. Bates, 235 Mo. 262, loc. cit. 286, 287, 138 S. W. 482, and cases cited; Roberts v. Irrig. Dist., 289 U. S. 71, 53 S. Ct. 519, 77 L. Ed. 1038.

''(8) It is true that the supplementary assessments were made without notice. That would seem to be a matter of lesser consequence as regards the second bond issue made in the original proceeding, as said issue was within the amount of benefits originally assessed. . . .''
See also In re Dancy Drainage District, 190 Wis. 327, 208 N. W. 479, l. c. 483 (4); People ex rel. Barber, Collector v. Chapman, 127 Ill. 387, 19 N. E. 872.

The reasoning employed by the court in the General American Life Insurance case may well be applied to the situation before us. The total of the original assessment in 1906 and the one in 1941 was far below the amount of benefits that the court found accrued to the landowners. Indeed, the present case presents an even stronger urge to hold the assessments not to be in violation of any constitutional rights of the landowners. To hold the assessment valid and enforceable simply means that the landowners in the district will be required to pay their just obligations. The district received the full benefit of the money furnished by the bondholders. Their whole defense is based upon a mistake or oversight when the original assessment was made. Reassessments or supplemental assessments are in general authorized when the original is found to be insufficient. See 28 C. J. S. 454, Sec. 76.

█ What we have said disposes of the constitutional question presented by the landowners. However, in their brief the landowners contend that the Legislature by the Act of 1913, in particular by Sec. 2 quoted above, attempted to breathe life into bonds and contracts which they say is a judicial and not a legislative function. [10] All that need be said in answer to that contention is that the landowners do not question the validity of the bonds. They assert only that the county court was without power to make the present assessment to raise funds to pay the bonds, and, therefore, so far as this case is concerned we need apply the 1913 act only as authorizing an assessment which is clearly a legislative function. 28 C. J. S. 395, Sec. 55.

█ The landowners also contend that the right of enforcement of the assessment is barred by the statute of limitations, Sec. 1013, R. S. Mo. 1939. There was a judgment entered on the bonds in the federal court, and therefore, as to the bonds, the statute of limitations is not before us. The federal court in 1941 issued a writ of mandamus for the assessment. We cannot review that case. The county court made its assessment in 1941 and the present suit was brought within the period of limitations. The point must be ruled against respondents. The judgment of the trial court is reversed and the cause remanded to that court with directions to enter a judgment in favor of the plaintiff and against the landowners. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.