**WHITAKER AND COMPANY,**
Appellant,

v.

**SEWER IMPROVEMENT DISTRICT NO. 1 OF DARDANELLE, ARKANSAS,**
et al., Appellees.

**No. 14900.**

United States Court of Appeals,
Eighth Circuit.

March 30, 1955.

---

S. L. White, Little Rock, Ark., for appellant.

Robert J. White, Russellville, Ark. (Herbert C. Scott, Dardanelle, Ark., on the brief), for appellees.

Before GARDNER, Chief Judge, and STONE and THOMAS, Circuit Judges.

STONE, Circuit Judge.

In the municipality of Dardanelle, Arkansas, Sewer Improvement District No. 1 was organized in 1917. In that year, the District issued sixty-five bonds of $500 each, bearing six per centum interest, and maturing annually and serially. After several years, there was default on the bonds. In 1937, the then holder of $18,300 (principal) of the bonds secured a decree in the United States Court for $28,074.01, which included past due interest. In 1939, the same holder had a further decree covering four additional bonds (total $2,000) and interest ($762.20). In 1948, these decrees were assigned to Roy A. Dickie. In 1951, Dickie filed a "Petition and Motion" seeking equitable relief which would enable him to ascertain and recover the balances due upon these decrees.[1]

Summarized, the answer pleaded that the entire amount of the benefits determined to accrue to all of the lands in the District had been paid by the respective property owners except $16,146; that plaintiff is entitled to recover this total sum, together with legal penalties and costs, from those property owners who are delinquent; that property owners who have paid in full the betterments to their properties have the liens thereon released; that the District has no assets except the above delinquent assessments; and that there is no legal authority to

---

1. All of these three actions were against the District, the District Commissioners, and the trustee under the pledge to secure payment of the bonds.

levy or assess "additional betterments or taxes against the lands, current or delinquent."

A stipulation of facts was filed. The Court stated in his decree that "from and upon consideration of the stipulation of facts, the orders and decrees heretofore entered, and all matters and things before the court, and the record as herein presented over a period of fifteen years", he made certain findings.

A summation of the here pertinent findings is: that the total benefits accruing from the improvement constucted are $78,086; that these betterments have been fully levied and are liens upon the various lots and tracts in proportion to the betterments levied upon the particular tract or lot; that there remain due and unpaid betterments in the total sum of $16,146; that such sum, together with penalties and costs as fixed by law, is the entire remaining assets of the District covered by the pledge securing the bonds; that the amount due upon the judgments is $35,486.27; and that plaintiff is entitled to have such delinquent assessments, together with penalties and costs, collected by a receiver and to immediate foreclosure to enforce payment.

The body of the decree named a receiver and ordered him to proceed to collect the delinquencies and to disburse receipts as directed therein. The Court expressly reserved two questions of law for future briefing and presentation as follows:

"1.   Under the law can this court direct the assessment of additional betterments against the various lots, blocks and parcels of land lying within said district;

"2.   Do the delinquent assessments in this district draw interest and if so, the date and rate from which such interest may be calculated."

Thereafter, the Court considered and determined the thus reserved matters in a "Decretal Order", the here material portions are as follows:

"1.

"That under the laws of the State of Arkansas, neither this Court nor the Commissioners of said Defendant District can direct the assessment of additional betterments against the various lots, blocks and parcels of land lying within said District.

"2.

"That the delinquent annual levy of the assessment of betterments in this District do not draw interest unless and until such times as the Commissioners of said defendant District shall have complied with Act 112 of the Acts of the General Assembly of the State of Arkansas of 1933, as amended by Act 241 of the Acts of the General Assembly of the State of Arkansas of 1937;

"That such acts are permissive legislation and not mandatory, and that the Commissioners of said defendant District have not heretofore complied therewith."

"4.

"That said Board, or the receiver herein appointed, determine and file with this Court a list of property upon which the full betterments have not been paid, and the amount of delinquent taxes upon each of the various lots, blocks and parcels of land so delinquent.

"5.

"That said Commissioners of said defendant District, after appointment, be directed to prepare and adopt a resolution fixing, finding and declaring the amount of unpaid betterments against each particular lot, block and parcel of land now delinquent and give notice of such resolution to refund, foreclose or re-assess delinquent annual levies in the manner required by law and Act 112 of 1933 as amended, during the publication of which notice of such resolution, said Commissioners and

the receiver herein are directed to accept full payment of such delinquent taxes from the owner of said tract, lot or parcel of land, and upon failure so to do by such property owner, that said delinquent assessments draw interest from the final date of such notice at the rate of six per cent (6%) per annum from said date until paid, as required by the laws of the State of Arkansas, more particularly Act 112 of 1933 as amended.

"6.

"That the lien of the betterments against the various blocks, lots and parcels of land in said defendant District by reason of the original pledge of betterments upon all property which has heretofore been paid in full be by said Commissioners and said receiver cancelled as a cloud upon the title to that particular lot, block or parcel of land.

"7.

"That unless said betterments be paid in full within sixty (60) days from the termination of the notice so hereinabove ordered, that the Commissioners of said defendant District, and the receiver herein, be ordered and directed to proceed in a manner now provided by law to foreclose said delinquent assessments upon the various lots, blocks and parcels of land in said District, and to report their actions therein to this Court, and that all funds collected by said Commissioners and the receiver be reported to this Court for further disposition."

This appeal by plaintiff is from this last decree. Appellant presents here three issues as follows:

1. The Court erred in holding additional assessments could not be levied;

2. Statutes and decisions afford ample provisions for collecting interest;

3. The Court erred for failure to direct proper steps be taken to liquidate debt.

Because of the character of these three issues, our field of consideration can be somewhat narrowed by first examining the last of these three issues. This arises from the broad general scope of that issue. Issues 1 and 2 are concerned with specific matters, being respectively additional assessments and recovery of interest on delinquent payments. This third issue is not so confined.

### The Third Issue.

■ This issue is that, this cause having been filed on the equity side of the Court prior to the adoption of the new Rules of Civil Procedure, the Court will grant "full and complete relief."[2] The circumstance that this cause was filed before the above Rules were adopted has no bearing upon any issue in this case. Substantive rights are not determined by these Rules, which are purely adjective.

■■ In the footnote 2, are quoted the equitable maxims which appellant urges as "applicable to the facts in this case." Obviously, the maxim which is, in its scope, inclusive of the two others is that "Equity will not suffer a wrong without a remedy." The required basis for application of this maxim is the presence of a "wrong". "Wrong", as used here, does not mean a "moral duty only, unconnected with legal obligations", Rees v. City of Watertown, 19 Wall 107, 121, 22 L.Ed. 72. "A court of equity cannot, by avowing that there is a right but no remedy known to law, create a remedy in violation of law, or even without the authority of law", Id., 19 Wall at page 122, 22 L.Ed. 72; quoted in Meyer v. City of Eufaula, Okl., 10 Cir., 132 F.2d 648, 652. What then, are the "legal obligations" due appellant, the violation of which constitutes a "wrong" giving him a right to avail himself of this maxim?

2. The brief quotes, as applicable maxims of equity:

"'Equity delights to do justice and not by halves. Equity will not suffer a wrong without a remedy. Equity imputes an intention to fulfill an obligation.'"

His rights must be sought in the contracts found in these bonds and the supporting pledge security. These contracts were made by an entity created by the State of Arkansas and possessing only such powers to contract and to act as are given it by that State.

Appellant's position is that the applicable Arkansas Statutes "do not provide for segregation on any property owners' share of the debt"; that these bonds are "general obligations, and under the 'Last faithful acre doctrine,' each lot or parcel of land in the District remains bound until the debt is paid." Appellant cites and quotes from several cases supporting the "doctrine" of general liability of all property for the debts of a District but all of such citations, with one exception, concern statutes of States other than Arkansas.[3] These citations are not controlling here because they have to do with statutes of States other than Arkansas; and as to matters dependent entirely upon State law. Whether the doctrine of the "last faithful acre" is applicable in Arkansas to a District of this character is, in all essence, the same issue as presented by appellant under his first contention that additional assessments may be made to pay this debt.

The only Arkansas decision cited in support of this third issue is Benton v. Nowlin, 187 Ark. 738, 62 S.W.2d 16. This cited case is useful only in connection with the second issue here which is concerned with the issue of interest.

The net result as to this third issue is that it poses nothing not already included in and covered by the two other issues, which are Betterments and Interest.

### Betterments.

The decree now appealed determined: that, under the laws of the State of Ar-

kansas, neither the Court nor the Commissioners of the District could "direct the assessment of additional betterments against the various lots, blocks and parcels of land lying within said District;" and that the lien of betterments "by reason of the original pledge" therefor upon all land where the benefits thereon had been paid in full should be cancelled as a cloud upon the title of such land. These decretal provisions present the issue as to whether assessment of benefits beyond those set out in the original assessment thereof can be made to pay this judgment due plaintiff-appellant. It is clear that authority for such additional assessments must be found only in the laws—constitution, statutes and judicial decisions—of the State.

The 1874 Constitution of Arkansas, Article 19, § 27, expressly empowers the General Assembly to grant authority to towns and cities to make assessments for local improvements "but such assessments shall be [made] ad valorem and uniform."

As to statutes. Apparently, the first general statute passed under this constitutional provision was the Act 84 of March 22, 1881. That Act provided that such assessments should be measured by percentages of the value of the various tracts within the District as such values were set forth in the last assessment for general taxes. The amendatory Act of May 8, 1899 allowed a choice of two methods of assessments for such local improvements, to-wit, the old method or an assessment against each separate tract of land based on the benefits accruing to it from the improvement. The original assessment of benefits could be altered only because of addition to or loss of improvements upon the particular tract. Apparently, the special benefit method has entirely replaced all others.

---

3. In re Horse Heaven Irrigation Dist., 11 Wash.2d 218, 118 P.2d 972; Roberts v. Richland Irrigation Dist., 289 U.S. 71, 53 S.Ct. 519, 77 L.Ed. 1038 (State of Washington); Judith Basin Irrigation Dist. v. Malott, 9 Cir., 73 F.2d 142, 97 A.L.R. 504 (Montana); State ex rel. Malott v. Board of County Commissioners, 89 Mont. 37, 296 P. 1; State ex rel. McGee, County Treasurer, etc., v. Wilson, 358 Mo. 1244, 220 S.W.2d 6; State ex rel. Douglas, etc., v. Redman, 270 Mo. 465, 194 S.W. 260; Drainage Dist. No. 4, etc., v. Murphy, 8 Cir., 119 F.2d 390 (Missouri).

■ As to judicial decisions. The case of Ahern v. Board of Improvement Dist. No. 3 of Texarkana, 69 Ark. 68, 61 S.W. 575 seems to be the initial case holding that an assessment for local improvements in a city complied with the above constitutional requirement where the assessment was based upon particular benefits to the several tracts within the District. Subsequently, a long line of Arkansas decisions has firmly established the doctrine that the only theory upon which an assessment can be made, under the State Constitution, is that a special benefit—meaning increase of value—will result to the particular tract because of the improvement. Kelley Trust Co. v. Paving Dist., etc., 184 Ark. 408, 43 S.W.2d 71, 73. To assess a tract in excess of such benefits violates the Constitutional prohibition as an attempt to take private property for a public purpose without just compensation therefor, Kelley Trust Co. v. Paving Imp. Dist., etc., 185 Ark. 397, 47 S.W.2d 569, 570.[4]

■ The State statutes prescribe the manner and the time limits for testing the validity of assessments of benefits— as a whole or as to a particular tract of land within a district organized in a city or town, Kirst v. Street Imp. Dist., etc., 86 Ark. 1, 109 S.W. 526. We need not notice such procedures beyond stating that, unless such are timely made use of, the original assessment of benefits becomes final except for annual readjustments confined to changes in improvements upon the land occurring after the original assessment of benefits, Street Imp. Dist., etc., v. Goslee, 183 Ark. 539, 36 S.W.2d 960; Johnston v. Conway; supra.

■ The Arkansas law sustains the position of appellees that no assessment of benefits can be levied by them beyond those set out in the original assessment therefor. This is the determination which the Court below made in disposing of the first of the questions reserved in its decree of March 2, 1953 as answered in the later decree now before us.

### Interest.

This issue involves the second of the matters reserved in the decree of March 2, 1953, and is

"2. Do the delinquent assessments in this district draw interest and if so, the date and rate from which such interest may be calculated."

In the decree (June 16, 1953) now appealed, the Court determined this issue as follows: that the delinquent annual levy of assessment of benefits did not draw interest "unless and until" the Commissioners of the District complied with Act 112 of 1933 as amended by Act 241 of 1937; that such Acts were permissive instead of mandatory and the Commissioners had not "heretofore complied therewith"; that the Commissioners shall adopt a resolution (1) fixing the amount of "unpaid betterments" as to each particular piece of land, and (2) giving notice of a refunding proceeding under said Act 112 as amended; that, during publication of such notice, full payment of such delinquent taxes on any piece of land should be accepted; that delinquencies not so paid should bear six per centum interest from the final publication date until paid "as required by the laws of the State of Arkansas, more particularly Act 112 of 1933 as amended"; that foreclosure proceedings should be brought on all such delinquent assessments not paid within sixty days after the above final publication date.

The net results of these provisions of this decree were: (1) to excuse from all further liability (including payments of any interest) all land whereon the assessed benefits had been fully paid before the final date of publication of the above

---

4. There have been a multitude of Arkansas cases determining various aspects of the matters treated therein in this paragraph of this opinion. The principles are so firmly established that we limit our citations. The case of Johnston v. Conway, 151 Ark. 398, 237 S.W. 80 may be added because of the similarity of the fact situation to that before us.

notice; (2) to place an interest charge of six per centum upon all unpaid assessments of benefits to run from the final publication date until such separate assessment was fully paid; and (3) to foreclose upon all land delinquent more than sixty days after such final publication date. In short, the only collectable interest was the 6% to be levied on betterment assessments delinquent after the above publication of notice. This plan was designed to put in force the Court's determination that there could be no interest charges on delinquent annual assessments except such as were delinquent at the time a refunding proceeding under Act 112 of 1933 as amended became operative.

■ The parties agree that whether assessments of benefits for local improvement districts bear interest is entirely controlled by statutes which must " 'expressly or impliedly' " authorize such.[5] Also, there seems to be no dispute that when the right to exact interest is allowed under Arkansas statutes it is confined to deferred (instalment) payments and is regarded as a permissible additional betterment arising to the advantage to the landowner from the use of money borrowed to construct the improvement.[6]

In examining the Arkansas statutes and decisions as to interest upon securities issued by a local improvement district, a difference must be noted between the law applicable to municipal districts (such as paving or sewer) and other districts (such as drainage or levee). As to the latter, the legislative Acts frequently provided that a property owner might, within a definitely limited period after organization of such district, pay his entire assessment of benefits but that where he did not do this the unpaid amount or balance after the first partial payment should be by annual instalment payments which (if securities were is-

sued by the district) should bear interest. It was not until 1933 that an Act was passed which applied also to *municipal* districts in a manner to be hereinafter described. This Act is Act No. 112 of 1933 now incorporated substantially as Title 20–205, 20–206 and 20–207 of the 1947 Statutes Annotated.

This Act No. 112 is purely a grant of power to municipal improvement districts to refund existing bonded indebtedness. It arose from the financial and economic conditions brought about by the depression of 1929 and immediately following years.

Section 1 of that Act provided that such districts "shall have power" to refund their outstanding indebtedness, including bonded indebtedness and accrued interest thereon, by the issue of new bonds having prescribed limitations as to interest and duration.

Section 2 prescribed that "In order to provide for the additional interest requirement of such refunding bonds * * *, the improvement district issuing refunding bonds may follow any one of the alternative procedures hereinafter outlined and designated as (a), and (b) to-wit:" then follows the method set forth in "(a)", and the method set forth in "(b)".

In so far as here pertinent, it is useful to examine these two methods only to a limited extent. Generally, each provides that the procedure thereunder shall be initiated by resolution of the Board of Commissioners of the district; that such resolution shall determine the "entire balance unpaid on the date of the refunding bonds of the assessment of benefits against each lot, block and parcel of land and railroad track and right of way" which shall bear interest at not exceeding 6%; that such interest shall be levied annually upon the balance of unpaid benefits; and that such levy of in-

5. See Turner v. Ederington, 170 Ark. 1155, 282 S.W. 1000; Pfeiffer v. Bertig, 141 Ark. 531, 217 S.W. 791, 792.

6. Kersh Lake Drainage Dist. v. Johnson, 203 Ark. 315, 157 S.W.2d 39, 40, and numerous cases there cited, including Benton v. Nowlin, 187 Ark. 738, 62 S.W. 2d 16, 19.

terest need not be collected "until it is necessary to do so to avoid exceeding the total amount of benefits." The cardinal difference between "(a)" and "(b)" is that under "(a)" the existing unpaid balance of betterments is finally determined to be the particular and total benefits as a basis for refunding; while under "(b)" an opportunity for reassessment of benefits is afforded any property owner in the district.[7]

Section 3 of the Act sets forth the form of the refunding bonds and declares that such bond holders shall have all the rights of security and remedies for enforcement thereof as provided for the original bonds.

This Act No. 112 of 1933 was not a mandatory Act enacted to compel all municipal districts. It was purely a grant of power which was made available to such municipal districts as desired to make use thereof.

An important consideration in any application of this power was necessarily the matter of interest in connection with the refunding arrangement. Up to the passage of this Act, the Arkansas law had expressly allowed interest upon deferred payment of benefits as to improvement districts *other than* municipal districts—such as levee or drainage districts—but had never authorized such interest on deferred payments of municipal districts.

Section 2 of the Act (now 20–206 of the 1947 Statutes Annotated) is devoted to this matter of interest on refunding bonds [8] and is quite different from district law covering non-municipal districts such as levee or drainage districts. Those differences are vital here. By Section 2, interest on refunding bonds is to be levied only on "the entire balance unpaid on the date of the refunding bonds of the assessment of benefits against each lot, block and parcel of land and railroad track and right-of-way * * * from the date of the refunding bonds until paid * * *." Such provisions clearly limit such interest to the basis of unpaid benefit assessments which are such at the date of the refunding bonds.

The contentions of appellant are (1) that less than $4,436 of the original assessment of benefits has been applied actually to the principal of the bonds or to construction of the improvement, thus "leaving in excess of $30,836 [thereof] available for collection and application [on the judgments], plus interest thereon for the length of time that will be required to liquidate and, plus all costs herein accrued"; and (2) seemingly [9] that interest on deferred instalment payments of benefits may be applied retroactively before the issue of refunding bonds.

(1) It is true that most of the collections of benefits have been applied to bond interest instead of bond principal. However, the argument and conclusion drawn therefrom by appellant are unsound. They result from confusion of interest upon the bonds with interest upon deferred instalment payments of benefits. Prior to Act 112 no municipal district had lawful authority to impose interest upon such deferred payments. Consequently, there could be no such ap-

---

7. This opportunity is afforded by a publication of notice giving an appeal, within ten days to the City or Town Council to have the assessment revised and, within thirty, to the Chancery Court of the County for revision. If no such appeals are taken, the assessment of benefits as determined by the Board becomes final except for annual revisions based on increased or decreased value of improvements on the tract, etc., having unpaid benefit assessments. In "(a)", the amount of unpaid benefits as determined by the Board is not subject to reexamination.

8. While this section included also "the expense incurred in connection with the issuance of such refunding bonds," that provision, although necessary, was a comparatively trivial consideration. See Benton v. Nowlin, 187 Ark. 738, 62 S.W.2d 16, at page 20.

9. We state this contention "(2)" as being "seemingly" made because such position would apparently follow from some of the cases cited by appellant.

portionment of benefit payments between interest and principal of bond payments which would reduce the amount of payments of originally assessed benefits.

■ (2) Section 2 of Act 112 expressly negatives any retroactive effect or application of interest on instalment payments of benefits. That Act is definitely prospective in respect to such character of interest. It makes interest on such refunding bonds payable only upon the "entire balance unpaid on the date of the refunding bonds of the assessment of benefits" against each piece of land; and it makes such interest payable only "from the date of the refunding bonds".

Appellant relies upon three Arkansas cases [10] as supporting his position. The two Greer cases are different stages in a *drainage* district litigation. They have no application to the legal situation before us. The Benton case involved the constitutionality of this Act No. 112— particularly Section 2(b) thereof. The suit was to enjoin the District Commissioners from proceeding with a refunding plan. The bases of the suit were that the allowance of interest on benefit instalments unpaid on the date of the proposed refunding bonds and the provision for payment of the expenses of refunding were invalid because they increased the amount beyond that of the original assessment of benefits.

Therein, the Supreme Court of Arkansas, as to a *city street improvement district*, held *inter alia*: that benefit assessments must be based on and cannot exceed the value of special benefits to the property taxed therefor; that interest on payment of deferred benefit instalments, where authorized by statute, is not part of the original benefit assessment and does not increase such; that such interest may be legislatively authorized even after the original assessments have been made and the improvement finished; and that legislation may authorize municipal district commissioners

to declare benefit instalments unpaid on date of refunding bonds to be the assessment of benefits for refunding purposes.

In so far as here directly pertinent, the Benton case sustains the position of appellees. This it does in upholding the provisions of Act No. 112 in respect to the balance of the unpaid original benefits being the source "from which the bonds as refunded are to be paid", 62 S.W.2d at page 19; and in respect to allowing interest upon such deferred instalments as thus arrived at in Section 2.

### Conclusion.

■ Our conclusions upon the entire appeal before us are: that appellant has failed to sustain any of the three issues presented here; that the order or decree appealed from is correct; and that the order or decree should be and it is

Affirmed.

---

10. Greer v. Wine, 219 Ark. 425, 243 S.W. 2d 13; Greer v. Blocker, 218 Ark. 259, 236 S.W.2d 68; and Benton v. Nowlin, 187 Ark. 738, 62 S.W.2d 16.